**RATLIFF v. STATE.** (5 Div. 480.)

(Court of Appeals of Alabama. Dec. 18, 1923.)

1. Homicide ⬱169(3)—Evidence of former difficulty with third party held error.

In prosecution for first degree murder it was error to permit proof of a former difficulty between defendant and a third party.

2. Homicide ⬱338(4)—Effort to right wrong of evidence of difficulty between defendant and third party held abortive.

In prosecution for murder where proof of former difficulty between defendant and a third party was admitted, court's statement after conclusion of the state's opening argument, that all evidence which had to do with the former difficulty was excluded from jury's consideration, was abortive to cure the error.

3. Homicide ⬱200—Rule as to admissibility of "dying declarations" stated.

Dying declarations made under a sense of impending death are admissible where death of deceased is the subject of the charge and the circumstances of death are the subject of the declarations.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Dying Declarations.]

4. Homicide ⬱200—"Dying declarations" defined.

"Dying declarations," in a homicide case, are those made by the victim of the homicide,

referring to the material facts which concern the cause and circumstances of the killing, uttered under a fixed belief that death is impending and certain to follow immediately or in a very short time, without an opportunity for retraction and in the absence of all hope of recovery.

**5. Homicide ☞214(3)—Deceased's statement to wife before death held irrelevant as dying declaration.**

In a prosecution for murder it was error to permit evidence of deceased's statement to' his wife at a hospital, "Sugar, kiss your baby good-bye, he's going to die; be a good sweet girl, and do the best you can," as a dying declaration, it being irrelevant and its effect calculated to arouse jury's sympathy.'

**6. Homicide ☞216 — Alleged dying declarations inadmissible in absence of showing of sense of impending death.**  •

In prosecution for murder, where no proper predicate was laid for admission of alleged dying declarations by showing that deceased was convinced that his death was impending, admitting them as such was error.

**7. Homicide ☞319—Newly discovered evidence held to justify new trial.**

In prosecution for murder, where state's theory was that defendant shot deceased when he was unarmed, and defendant's that he shot deceased when attacked with a hammer, newly discovered evidence showing deceased's possession of the hammer prior to the difficulty, defendant not being negligent in failing to produce such evidence, and such possession having been denied by the state's witnesses, *held* sufficient to warrant new trial.

Appeal from Circuit Court, Russell County; J. S. Williams, Judge.

Oscar Ratliff was convicted of murder in the second degree, and appeals. Reversed and remanded.

Frank M. de Graffenried, of Seale, for appellant.

Details of the difficulty between defendant and the brother of deceased were not admissible in evidence in this case. Fonville v. State, 91 Ala. 39, 8 South. 688; Gray v. State, 18 Ala. App. 367, 92 South. 533; Clemmons v. State, 18 Ala. App. 650, 94 South. 245; Jones v. State, 17 Ala. App. 394, 85 South. 830. A dying declaration, when properly predicated, is admissible in evidence in proof of any fact relevant to the issues involved, but not otherwise. Gissendanner v. State, 18 Ala. App. 199, 89 South. 835; Pilcher v. State, 16 Ala. App. 237, 77 South. 75; Lenier v. State, ante, p. 227, 96 South. 459; Sanders v. State, 2 Ala. App. 13, 56 South. 69; Owens v. State, 74 Ala. 401; Young v. State, 95 Ala. 4, 10 South. 913; Justice v. State, 99 Ala. 180, 13 South. 658. The defendant was entitled to a new trial. Dempsey v. State, 15 Ala. App. 199, 72 South. 773; Grissett v. State, 18 Ala. App. 675, 94 South. 271.

Harwell G. Davis, Atty. Gen., for the State.

No brief reached the Reporter.

BRICKEN, P. J. The defendant was indicted by the grand jury of Russell county, at the spring term 1923, for the offense of murder in the first degree.

He was arraigned in open court on April 2, 1923, pleaded not guilty to the charge, and on April 4, 1923, was put upon trial and was convicted of murder in the second degree, his punishment being fixed by the jury at ten years' imprisonment in the penitentiary. Judgment of the court was entered sentencing him to ten years' imprisonment in accordance with the verdict of the jury, from which he appeals to this court.

On the trial of this case in the court below, numerous exceptions were reserved to the rulings of the court upon testimony, and these, together with the exception reserved to the overruling defendant's motion for a new trial, are relied upon to effect a reversal of the judgment. No exception appears to have been reserved to the oral charge of the court, nor does the record disclose that any special written charges were requested by either side.

The evidence, as shown by the bill of exceptions, discloses that Roy Smith, the deceased named in the indictment, was killed on the 22d day of January, 1923. According to the testimony offered for the state, he was killed by defendant in the back yard of one John Ratliff, a brother of the defendant Oscar Ratliff, and with whom he (the defendant) then resided. But according to the evidence offered in behalf of defendant the killing occurred inside the residence of John Ratliff where he (the appellant) lived at the time.

Over the objection and exception of the defendant it appears that the court admitted testimony to the effect that the appellant had had a prior difficulty on the same afternoon witth one Bud Smith, a brother of Roy Smith, the deceased named in the indictment. And it appears from the testimony, thus admitted, that at the time of that difficiulty the deceased was in his residence asleep. In said previous difficulty Bud Smith was shot, and thereafter Roy Smith was awakened by a kinsman and informed of the difficulty between the appellant and Bud Smith, his brother, and thereupon Roy Smith, the deceased, went upon the premises where the appellant lived and the fatal difficulty between the deceased and the appellant then ensued.

According to the testimony offered in' behalf of the state, the deceased went upon the premises where this defendant resided unarmed and alone and was shot by the defendant just as he turned a corner of the house, and while out in the yard. The evidence for the defendant in the court below tended to show that he was inside the home of a kins-

---

man, his brother, with whom he resided, and that the deceased came into the house and made an attack on him with a hammer and that he fired two shots, one to stop the deceased and the other with the intent to kill, the contention of the defendant in the court below being that he acted in self-defense.

[1] Numerous exceptions were reserved to the admission in evidence by the trial court of the details of the former difficulty between Bud Smith, the brother of the deceased, and the defendant.

The rulings of the court in allowing the state, over the objection of defendant, to prove a former difficulty between the defendant and a third party was error. Clemmons v. State, 18 Ala. App. 650, 94 South. 245; Fonville v. State, 91 Ala. 39, 8 South. 688; Redden v. State, 7 Ala. App. 33, 60 South. 992; Gary v. State, 18 Ala. App. 367, 92 South. 533; Jones v. State, 181 Ala. 63, 78, 61 South. 434; Sims v. State, 146 Ala. 109, 118, 41 South. 413. It is an elementary rule of evidence that the details of such difficulty were inadmissible. Jones v. State, 17 Ala. App. 394, 85 South. 830.

[2] In connection with the above rulings we note from the record that the court undertook to cure the error by stating (after the conclusion of the 'opening argument by the state) "that all testimony which has to do with the details of any former difficulty or previous trouble as between the defendant and the brother of the deceased, is now expressly excluded from the consideration of the jury." We are of the opinion that this effort, to right the wrong which had been done, was abortive. Cassemus v. State, 16 Ala. App. 61, 75 South. 267. The discussion by this court in the case of Davis v. State, 18 Ala. App. 482, 93 South. 269, as to this character of procedure is in point; we need not discuss it further here, except to add that the testimony was of a highly prejudicial nature (Dennison v. State, 17 Ala. App. 674, 88 South. 211) and was permitted to remain with the jury throughout the trial of the case and until the first speech for the prosecution by the special solicitor had been concluded. By this ruling of the court, at the period of the trial stated, counsel for appellant were of course deprived of the opportunity of replying to argument of the state's counsel predicated upon the illegal evidence before the jury at the time which argument by the state was permitted to remain before the jury.

[3, 4] The next insistence of error relates to the rulings of the court in admitting the dying declarations of deceased. It has been definitely settled that. dying declarations made under a sense of impending death, are admissible as evidence, where the death of the deceased is the subject of the charge, and the circumstances of the death are the subject of the.declarations. In other words, evidence of this character constitutes an exception to the rule rejecting hearsay evidence. Such declarations are those made by the victim of a homicide, referring to the material facts which concern the cause and circumstances of the killing, and which are uttered under a fixed belief that death is pending and is certain to follow immediately, or in a very short time, without an opportunity for retraction and in the absence of all hopes of recovery.

[5] In the instant case the court permitted the wife of the deceased to testify that, immediately preceding the death of the deceased, she went to a hospital to which the deceased was carried before his death and went to the bedside of the deceased and he said to her, "Sugar, kiss your baby good-bye; he's going to die; be a good sweet girl, and do the best you can." This witness testified that this was the only statement made to her by the deceased, and the record shows that no dying declaration relating to the circumstances attending the killing was made by the deceased to any one after this statement. The defendant objected to the statement made by the deceased to his wife and objected to the question which called for the statement and moved to exclude the same, which objection and motion the trial court overruled, and the defendant excepted.

It was error to admit the above statement as a dying declaration for the reason it had no bearing upon the issues involved, and was therefore not relevant. Its effect we think was necessarily injurious, calculated as it was to arouse in the minds of the jury sympathy for the dying man and his surviving widow then present in court and testifying, and, also, to inflame the minds and hearts of the jury with prejudice toward the man who stood before them charged with the killing of deceased. This testimony was not admissible under the rule laid down in Pilcher v. State, 16 Ala. App. 237, 77 South. 75; Gissendanner v. State, 18 Ala. App. 199, 89 South. 835; Lenier v. State, ante, p. 227, 96 South. 459.

[6] The next exception relates to the admission of statements made to state witness L. W. Jones by the deceased as dying declarations. At the time these statements were made no predicate had been laid to bring them within the rule above announced, and so well settled. These statements were therefore improperly and erroneously allowed. Young v. State, 95 Ala. 4, 10 South. 913; Justice v. State, 99 Ala. 180, 13 South. 658; Gissendanner v. State, supra.

[7] We are also of the opinion that the court should have granted the defendant's motion for a new trial upon the grounds of newly discovered evidence relating to the possession of the hammer introduced in evidence. The theory advanced by the state, as conclusively shown by the record, was that the deceased wholly unarmed and defenseless was ruthlessly shot unto death by defendant, and

in support of this theory offered testimony that at the time Smith, deceased, went upon the premises he had no hammer in his possession. And it is clear that the state insisted by inference and otherwise that the hammer was put into the case by the defendant as a subterfuge, and that the insistence of defendant that he was being attacked in his own home by defendant with a hammer was untrue. The defendant and his sister-in-law, Mrs. John Ratliff, who were the only eyewitnesses to the actual shooting, both testified that deceased was armed with the hammer in question when he came into the house and immediately undertook to strike defendant therewith and was in close proximity to defendant in this act at the time the fatal shot was fired. It is therefore very evident that the bona fides of these insistencies were most material. The evidence introduced upon the motion for new trial bore directly upon this all-important fact, and tended to show that the hammer was the property of one of these witnesses and that it had been loaned to Smith and had been in his (Smith's) possession for some time. That there was no means by which this testimony could have been known to the defendant is self-evident.

The wife of the deceased and his father-in-law both testified that the hammer which was introduced in evidence had not been in the possession of the deceased. Whether or not the deceased attacked the defendant with the hammer was most material under the defendant's plea of self-defense. If the hammer had not been in the possession of the deceased, then the statement of the defendant that he was attacked by the deceased with that identical hammer was untrue and was therefore unworthy of belief. On the motion for new trial, the testimony of the witnesses, Tharpe and Edmonds, placed the hammer in question in the possession of the deceased some time prior to the fatal difficulty and this evidence might have had and probably would have had the tendency to establish the reasonable belief that the deceased was in fact, at the time of the fatal difficulty, in possession of said hammer as insisted upon by defendant. The testimony in question would have been competent evidence on the trial of the defendant. It was not merely cumulative testimony and might have been sufficient to have generated in the minds of the jury a reasonable doubt of the defendant's guilt, under his plea of self-defense. The defendant not having had the benefit of this testimony, and, as stated from the very nature of the testimony itself, having acquitted himself of all negligence in failing to produce this evidence upon the trial, it was the duty of the trial court to grant the defendant a new trial upon his motion for this purpose. Dempsey v. State, 15 Ala. App. 199, 72 South. 773;

Grissett v. State, 18 Ala. App. 675, 677, 94 South. 271.

For the errors designated, the judgment of the circuit court is reversed and the cause is remanded.

Reversed and remanded.

SAMFORD and FOSTER, JJ., concur in the reversal of the case, but do not agree with the views of BRICKEN, P. J., that a new trial should have been granted on the ground of newly discovered evidence.