(136 So. 420)

## WHITE v. STATE.

### 7 Div. 758.

Court of Appeals of Alabama.
Aug. 4, 1931.

L. H. Ellis, of Columbiana, for appellant.

Thos. E. Knight, Jr., Atty. Gen., for the State.

## SAMFORD, J.

The defendant was indicted for the murder of G. C. Roper, and on his trial was convicted of murder in the second degree and sentenced to twenty years in the penitentiary. The homicide took place in the home of defendant some time after 9 o'clock at night. The parties were next door neighbors, and up to the time of the fatal difficulty had been on friendly terms, and even on this night deceased was at the home of defendant by invitation given as deceased was going into his own home. The wives of both defendant and deceased were away from home, and the visit of deceased began as is usual between friends. After the deceased had been in defendant's home for some time, an altercation arose in which deceased, being a stalwart man weighing 180 pounds and defendant a small man weighing 135, assaulted and beat defendant with his fists, and defendant shot deceased with a small gun which he picked up during the altercation, from which gunshot deceased died. The state claims that the shot was fired before any assault had been made by deceased, as a result of anger engendered by words, while the defendant claims that both he and deceased were drinking; that after the whisky begun to take effect the deceased began cursing and abusing defendant; that defendant tried to avoid a difficulty, and ordered deceased out of his home; that deceased refused to go, but was assaulting and beating defendant, when defendant "jerked loose," grabbed the gun, and, as deceased continued to advance upon him, he fired; that the shot did not stop deceased, but deceased continued the assault, knocking defendant down and beating him severely.

In the development of its case the state offered the testimony of Mrs. G. C. Roper, the wife of deceased, who, after testifying as to where she was at the time of the homicide and the time at which she arrived at her husband's bedside, the following appears in the bill of exceptions:

"Thereupon the Solicitor for the State propounded to the witness the following question:

"Q. Did he call you by name, or by the affectionate name he usually called you?

"The defendant objected to the question on the following separate and several grounds, viz: '1. It is illegal; 2. It is immaterial; 3. It is incompetent; 4. It is irrelevant.

"The Court overruled said objection and to this ruling of the Court the defendant then and there reserved an exception.

"The witness answered the question as follows:

"A. Yes, sir, he did.

"The defendant moved to exclude the answer on the same grounds as were interposed to the question to which it was responsive.

"The Court overruled said motion and to this ruling of the court the defendant then and there reserved an exception.

"There in the Hospital, before he died, Dr. Roper made a statement to me, and before he made that statement he said something in reference to whether he believed that death was impending, or in reference to his belief that he was going to die, and after that he made a statement in reference to his being shot.

"Thereupon the Solicitor for the State propounded to the witness the following question:

"Q. I will ask you to tell this jury and his Honor what he said with reference to whether or not he believed he was going to die?

"The witness answered the question as follows:

"A. He reached over and caught my hand and said 'Hold me tight' and called me by my name and said 'The end is very near' and

said 'I want you to see that my name is cleared to the world—that White gets justice.'

"The defendant moved to exclude said answer on the following separate and several grounds, viz: 1. It is illegal; 2. It is immaterial; 3. It is incompetent; 4. It is irrelevant.

"The Court overruled said motion and to this ruling of the court the defendant then and there reserved an exception.

"Thereupon, the defendant moved to exclude that portion of said answer as follows: 'I want you to see that my name is cleared to the world—that White gets justice,' and for grounds of said motion assigns the following separately and severally, viz; 1. It is illegal; 2. It is immaterial; 3. It is incompetent; 4. It is irrelevant; 5. It forms no part of a dying declaration; 6. It forms no legal part of a dying declaration.

"The·court overruled said motion and to this ruling of the court the defendant then and there reserved an exception.

"The defendant then and there moved the court to exclude that portion of said answer which is as follows: 'He reached over and caught my hand and said "Hold me tight"' and for grounds of said motion assigns the following separately and severally viz: 1. It is illegal; 2. It is immaterial; 3. It is incompetent; 4. It is irrelevant; 5. It forms no part of a dying declaration; 6. It forms no legal part of a dying declaration.

"The court overruled said motion and to this ruling of the court the defendant then and there reserved an exception.

"Thereupon the Solicitor for the State propounded to the witness the following question:

"Q. Go ahead, what did he say? A. He said 'He shot me down like a dirty dog—I did not have a dog's chance to defend myself.'

"Thereupon the defendant moved to exclude said answer on the following separate and several grounds, viz: 1. It is illegal; 2. It is incompetent; 3. It is immaterial; 4. It is irrelevant; 5. No sufficient predicate has been laid for the introduction of that evidence; 6. The same forms no part of a dying declaration; 7. It forms no proper part of a dying declaration; 8. It forms no legal part of a dying declaration.

"The court overruled said motion and to this ruling of the Court the defendant then and there reserved an exception.

"Thereupon the defendant moved to exclude the following portion of said answer, viz:

" 'He shot me down like a dirty dog.'

"And for separate and several grounds for said motion assigns the following, viz: 1. It is illegal; 2. It is incompetent; 3. It is immaterial; ·4. It is irrelevant; 5. No sufficient predicate has been laid for the introduction of that evidence; 6. The same forms no part of a dying declaration; 7. It forms no proper part of a dying declaration; 8. It forms no legal part of a dying declaration.

"The court overruled said motion and to this ruling of the court the defendant then and there reserved an exception.

"Thereupon the defendant moved to exclude the following portion of said answer, viz:

" 'I did not have a dog's chance to defend myself.'

"And for separate and several grounds for said motion assigns the following, viz: 1. It is illegal; 2. It is incompetent; 3. It is immaterial; 4. It is irrelevant; 5. No sufficient predicate has been laid for the introduction of that evidence; 6. The same forms no part of a dying declaration; 7. It forms no proper part of a dying declaration; 8. It forms no legal part of·a dying declaration.

"The court overruled said motion and to this ruling of the court the defendant then and there reserved an exception."

The trial proceeded for two days, and, after the evidence was all in and closed, the court ex·mero motu excluded the following testimony of the witness Mrs. Roper, to wit: "I want you to see that my name is cleared to the world and see that White gets justice." "Mr. White shot him before he realized what had happened—that he did not think he was going to shoot him"—with the remark: "Now that part of the testimony I have excluded you are not to consider as testimony or evidence in making your verdict."

After the verdict, defendant made a·motion for a new trial assigning among others the rulings of the court as above indicated.

There was also included in the motion for a new trial the ruling of the court in overruling defendant's motion to exclude that part of the dying declaration testified to by the witness Sharpe: "And he said that Mr. White shot him before he realized what had happened; that he didn't think he was going to shoot, and that he didn't have' a dog's chance."

 It is now the accepted law of this state that the dying declarations of the deceased must conform to the same rules of evidence as if the deceased himself were alive and on the stand giving testimony. Dying declarations are but secondary evidence, and in the nature of things should be received with great caution. They should be confined to the facts and circumstances constituting the res gestæ of the homicide, to which deceased could have testified if he were living. Pilcher v. State, 16 Ala. App. 237, 77 So. 75;

30 Corpus Juris 272 (510); Lewis v. State, 178 Ala. 26, 59 So. 577; Sanford v. State, 143 Ala. 78, 39 So. 370; Humber v. State, 19 Ala. App. 451, 99 So. 68; Autrey v. State, 190 Ala. 10, 67 So. 237. Hearsay evidence cannot be rendered admissible by being included in a dying declaration. Pilcher v. State, 16 Ala. App. 237, 77 So. 75. Nor can conclusions of deceased be received in evidence merely because they are included in a dying statement. Handley v. State, 212 Ala. 347, 102 So. 628; Norwood v. State, 11 Ala. App. 30, 65 So. 851; Le Nier v. State, 19 Ala. App. 227, 96 So. 459.

■ The staging of a deathbed scene before a jury is unfair to a defendant, and should never be permitted. Death is the "great enemy" of life, and, when a loved one is passing into the great unknown, such event evokes the deepest emotions of the human heart, and the recitals of the details can but arouse the sympathy of those who hear. The agony of a loving wife, clasping the hand of her life mate as he lay in a hospital gasping and struggling after having been shot down by his assailant, while he was in the midst of a strong stalwart manhood, listening to and hearing his few last endearing words to her, "Hold my hand tight (calling her by name) the end is very near," is not evidence of the facts and circumstances of the homicide, but is a scene the only effect of which is to reach the emotions of the jury and prejudice them against the slayer. Justice can never be administered in any such way. Ratliff v. State, 19 Ala. App. 505, 98 So. 493; Humber v. State, 19 Ala. App. 451, 99 So. 68; Jones v. State, 21 Ala. App. 33, 104 So. 878.

■ All of the foregoing illegal and prejudicial testimony was introduced in the beginning of the trial and all of it was allowed to stay before the jury to the end of the taking of testimony, which lasted two days. The court, in a very casual statement to the jury, then ex mero motu excluded certain parts, which we have herein before indicated. What this court has had to say on this point in Patterson v. State, 23 Ala. App. 428, 126 So. 420; Booth v. State, 22 Ala. App. 508, 117 So. 492; Davis v. State, 18 Ala. App. 482, 93 So. 269, in some of which opinions were quoted the statement of Mr. Justice Sayre in Maryland Casualty Co. v. McCallum, 200 Ala. 154, 75 So. 902, is peculiarly applicable to the case at bar. The evidence admitted over the strenuous objection of defendant, was illegal, prejudicial and calculated to influence the minds of the jury. It should never have been admitted, and, being admitted, it should have been promptly and emphatically excluded. Left with the jury during the entire time the testimony was being taken, it is doubtful if it could have been so excluded as to have extracted the poison, and certainly the casual manner in which this evidence was finally excluded did not cure the error.

■ Following what has hereinbefore been said, we hold that the statement of the witness Mrs. Roper, "He reached over and caught my hand, called me by name and said, 'hold me tight the end is very near,'" should have been excluded. Ratliff v. State, supra. The fact that deceased said to his wife, "The end is very near," in connection with other evidence of his condition, would have been admissible as a predicate for a dying declaration, but, as a statement in aid of and depicting a touching deathbed scene between husband and wife, it is entirely out of place and illegal. That part of the testimony, "I want you to see that my name is cleared to the world—that White gets justice," was also irrelevant and inadmissible. Autrey v. State, 190 Ala. 10, 67 So. 237. The statement in the testimony of Mrs. Roper, "He said: 'He shot me down like a dirty dog—I did not have a dog's chance to defend myself,'" was a conclusion and should have been excluded. Le Nier v. State, 19 Ala. App. 227, 96 So. 459; Jones v. State, 21 Ala. App. 33, 104 So. 878.

■ That part of the alleged dying declaration testified to by the witness Sharpe, "That he did not think he was going to shoot him and that he did not have a dog's chance," was the mere expression of an opinion, and should have been excluded. Gissendaner v. State, 18 Ala. App. 199, 89 So. 835. None of the foregoing statements could have been testified to by the deceased, if he had been alive and testifying, and that is the test by which we are governed. Norwood v. State, 11 Ala. App. 30, 65 So. 851.

■■ When the witness Hays was being examined by the state, he testified, among other things, that Dr. Roper, the deceased, was not drinking the night of the homicide; that he had known Dr. Roper several years and he did not have the appearance of a drinking man; that he talked to Dr. Roper in his car that night and did not smell whisky on him. On cross-examination this witness was asked: "You do not mean to say that Dr. Roper did not drink, do you?" The state's objection to this question was sustained. The contention of the defendant is that Dr. Roper and this defendant were both drinking at the time of the fatal shooting, and that the difficulty grew out of that fact. Cross-examination should not be unduly restricted. In this case we are of the opinion that the court erred in this ruling.

■ The fact that Dr. Roper went on a trip with the witness Sharpe some three years prior to the homicide was too remote to be relevant to any issue in this case.

The appellant has filed a very helpful brief on the submission of this case, and we have followed its outlines in passing upon the questions presented, omitting those which will not probably arise on another trial. No brief has

come to the hands of the court from the appellee.

For the errors pointed out, the judgment is reversed, and the cause is remanded.

· Reversed and remanded.