139 So.2d 119

**John Winston LIVINGSTON**

v.

**STATE.**

**6 Div. 828.**

Court of Appeals of Alabama.
Oct. 17, 1961.

Rehearing Denied Nov. 21, 1961.

Rowan S. Bone, Gadsden, for appellant.

MacDonald Gallion, Atty. Gen., and Jerry L. Coe, Asst. Atty. Gen., for the State.

HARWOOD, Presiding Judge.

The Attorney General has filed a motion to strike this record on the grounds that the Clerk of the Circuit Court below has not properly certified the record and that the court reporter has not sufficiently certified the transcript of the evidence.

It appears to be the contention of the State that the certificate of the court reporter fails to show that notice of the filing of the transcript of the testimony "was never given to the parties or their attorneys of record." It appears that there is a full certification of the transcript of the evidence by the official court reporter, and we find nothing in the statutes requiring that the court reporter certify he has notified the parties or their attorneys of record that he has filed the transcript of the evidence with the clerk below.

As to the certificate of the circuit clerk, it appears that the circuit clerk omitted to fill in the blanks relative to the numbering of the pages of the transcript. However his certificate starts off certifying that the "above and foregoing matter," and it is apparent that the failure to fill in the blanks as to the pages was a mere clerical error. Certainly the record before us is full and complete and the circuit clerk's certificate is under his seal. Nor does the Attorney General suggest that the transcript omits any matter that it should contain. See Seminole Graphite Co. v. Thomas, 205 Ala. 222, 87 So. 366. We do not consider that the motion of the Attorney General contains any substantial merit and it is accordingly overruled.

This appellant has been adjudged guilty of larceny of a Ford automobile, the property of Alvin Blakely.

The evidence introduced by the State tended to show that a 1955 Ford automobile was stolen from the driveway of Alvin Blakely's home in Blount County on the night of January 25, 1959.

About three weeks later Mr. Blakely saw his car parked in the lot of the "Downtown Motors" in the city of Gadsden. He thereupon reported his find to the police who possessed the car and towed it to the city hall. The next day he was present when this appellant was interviewed by detectives of the city of Gadsden. After proper predicate as to voluntariness, Blakely testified that during this interview the appellant made the following oral statement to the detectives:

"Well, they questioned him, asked him where did he get the car, and he said he didn't know; he said he got it from some fellow that weighed about one hundred sixty-five pounds, sandy headed and was a wildcat bootlegger, and said it was in the night; he come in and sold the car like that. He said he didn't even go out and look at it. He said the fellow wanted five hundred dollars for it. He said he just paid it. They asked him how he paid it, by check or money, and he said money. He said he didn't see the car until the next morning. It was dirty and he had it sent up to the Ford place to get it cleaned up."

Mr. A. C. Hill testified that he was in the automobile business in Gadsden operating under the name of Downtown Motors. He had known the appellant some 25 years and on several occasions had traded automobiles with him. The appellant was frequently by his used car lot, and he approached appellant as to buying a 1955 Ford automobile then in appellant's possession, which

by stipulation was the one that had been stolen from Mr. Blakely. Mr. Hill and the appellant entered into a trade for the automobile, the appellant acquiring another automobile from Mr. Hill and paying some $575 in addition. Mr. Hill thereupon had the Ford automobile cleaned up and placed on his car lot where it was later observed by Mr. Blakely.

At the time of the trade he gave the appellant a bill of sale to the car which he was selling him and had a discussion with the appellant as to where he had obtained the Ford automobile.

For the defense James G. Smith testified that he operated a grocery business in Gadsden in February 1959; that one Odell Jackson owed him $320 for merchandise and whiskey which he had sold to Jackson and that on or about January 30, 1959 between the hours of 8 and 9 o'clock at night, he bought the Ford automobile in question from Jackson for the amount of the bill which Jackson owed him, and $80 additional. The $320 bill was evidenced by a note in that amount dated November 5, 1958, and signed "Oden" Jackson. At the time of this transaction Smith testified that Jackson gave to him a bill of sale for the Ford automobile, the bill of sale being dated January 30, 1959. This bill of sale also bears the signature "Oden" Jackson. Smith further testified that he had known Odell Jackson ever since he had been in the grocery business and had had numerous dealings with him; that while he and others called him Odell Jackson, he was also known and called Oden Jackson. The next day after obtaining the automobile from Jackson he was introduced to the appellant at the home of one Lawrence Crump in the city of Gadsden, having never known the appellant previous to this time. After being introduced to the appellant, they entered into a trade for the Ford automobile, the appellant paying him $500 for the car. At this time he gave the appellant a bill of sale for the Ford automobile.

After the appellant's arrest and release from jail, he and the appellant went to Blount County where they contacted the sheriff of Blount County who directed them to the office of Judge Kelton. There they turned the note and bill of sale purportedly signed by Jackson over to Judge Kelton.

We interpolate here that these documents, together with a document bearing the known signature of Odell Jackson, were later forwarded to the State toxicologist for handwriting comparison.

■ The record shows the following during the cross-examination of defense witness James G. Smith:

"Q. You had never had any business with him or been involved in business with him. Have you ever sold any whiskey for him?

"Mr. Bone: We object to that, if the Court please.

"The Court: Sustained.

"Mr. Bone: At this time we ask the Court to declare a mistrial in this matter. The State Solicitor over here knows that is highly prejudicial. This is an attempt, an apparent attempt, an obvious attempt to prejudice this jury. This man here is charged with grand larceny and for no other offense."

Thereafter the court instructed the jury that they were to consider as evidence only that coming from witnesses, and that questions and statements by attorneys were not evidence.

In view of the sustension of the defense objection to the question, and the court's instructions to the jury, no error resulted from the above instance.

The appellant testified that he was introduced to James G. Smith at Lawrence Crump's house and at that time bought the car in question from Smith for $500. Upon his release from jail after being arrested for larceny of the Ford automobile he contacted him and they went together to Blount County and there turned the bill of sale and the note above mentioned over to Judge Kelton.

On cross-examination the appellant testified that he had never known Smith before he met him at Crump's house and had never had any previous dealings with him, and did not know whether Smith was married.

The appellant further testified as to his present employment and, without objection, testified that prior to his present employment as a construction worker, he was engaged in the business of selling whiskey, but that now he was out of that business.

He did tell the officers that he did not have a bill of sale for the car he bought from Smith, and he did not at the time of his interview with the officers have a bill of sale with him, but he did have a bill of sale at the time at his home, the bill of sale from Smith having been made out at the time he bought the car from Smith.

The appellant wrote the name "Oden Jackson" in the presence of the jury, and this writing was received in evidence.

In rebuttal the State introduced Jessie Mae Jackson, the widow of Odell Jackson. She testified that she was familiar with his handwriting, and that the purported signature "Oden" Jackson on the bill of sale to Smith, and on the note for $320 payable to Smith, were not in her deceased husband's handwriting.

The document described as an authorization concerning a birth certificate, and bearing the signature "Odell" Jackson was shown the witness and she identified the signature thereon as being in her husband's handwriting. This signature was received in evidence. On cross-examination Jessie Mae Jackson testified that she has been convicted of homicide in connection with the shooting of her husband and that her case is now on appeal.

Dr. J. C. Rehling, State toxicologist, being qualified as an expert in the examination of handwriting, testified that he had examined the signature "Oden" Jackson appearing on the bill of sale to Smith, and on the note for $320, and had compared these signatures with the signature "Odell'

Jackson appearing on the authorization for a birth certificate. After his examination of these signatures, Dr. Rehling testified that in his opinion the signature "Oden" Jackson on the bill of sale and on the note were written by the same person, and that the signature "Odell" Jackson on the authorization for the birth certificate was written by a different person.

██ Rachel Smith, the divorced wife of James G. Smith, testified that she had seen Smith and Livingston together on two occasions, they being in an automobile parked in front of the home she and Smith then occupied. Mrs. Smith further testified that to her personal knowledge she knew that her former husband James G. Smith and Livingston had been in business together prior to January 1959. The record then shows the following on Mrs. Smith's direct examination:

"Q. Do you know what business Mr. Livingston and Mr. Smith were associated together in—

"Mr. Bone. We object to that.
"Q. (By Mr. Hodges)—prior to January of 1959? A. Yes, sir.

"Mr. Bone. We object to that.

"The Court. Overruled.

"Mr. Bone. We reserve it.

"The Witness. Jimmie sold whiskey for him."

The above evidence was in rebuttal to the testimony of defense witness James G. Smith to the effect that the first time he had ever met appellant was at Lawrence Crump's house on the occasion that he sold the Ford automobile to the appellant, and also was in rebuttal to appellant's testimony that he had never known Smith prior to buying the Ford automobile from him at Crump's house, and that Smith had never sold whiskey for him.

Likewise no error to reversal resulted from the court's overruling the defendant's objection to a question propounded to the appellant on his cross-examination as to

whether Smith had ever been associated with him in selling whiskey. The appellant answered the question in the negative. Just previously he had testified that he had been in the whiskey business, and also that he had never known Smith before he met him on the occasion he bought the Ford automobile from him. The question was permissible under the principle that cross-examination should not be unduly restricted, White v. State, 24 Ala.App. 442, 136 So. 420.

The question sought evidence as to the relation and association between the appellant and his witness Smith. The range of cross-examination is within the sound discretion of the trial judge, and his rulings will not be disturbed except for gross abuse, Vandiver v. State, 37 Ala.App. 526, 73 So.2d 566. We find no abuse in the court's ruling in the above matter.

On her direct examination, State's witness Jessie Mae Jackson had testified that her husband, Odell Jackson, drank some, but was not a heavy drinker, and had never sold whiskey.

She was then asked if, to her knowledge, Odell had ever bought whiskey from James G. Smith. She answered "No, sir." The defense then interposed an objection. Coming after the answer, the objection was too late. Furthermore, the question sought evidence tending to rebut Smith's testimony that $250 of the $320 note which Odell Jackson had purportedly given him was for the purchase of whiskey from Smith.

Jessie Mae Jackson testified that her husband had never owned a 1955 Ford automobile.

Among others, the court refused the following charge requested in writing by the appellant:

"I–2. I charge you that in reaching your verdict in this case you may consider the pecuniary interest that any witness may have in the result of your verdict in weighing the testimony of such a witness."

Counsel for appellant strenuously argues the refusal of this charge as error, in that, counsel contends, Mr. Hill, the car dealer who testified for the State, may well have suffered a pecuniary loss upon returning the Ford automobile, purchased by him from the appellant, to its rightful owner.

Mr. Hill, the car dealer who had bought the stolen Ford automobile, was the only witness to which the above charge could have any possible application.

In Bowlin v. State, 24 Ala.App. 192, 132 So. 600, it was held error to refuse a charge identical with Charge I–2, supra.

However, a careful reading of Mr. Hill's testimony and of the appellant's testimony shows there is no substantial difference in their versions as to the transaction between them relative to appellant trading the Ford automobile to Mr. Hill, but rather that the two accounts of the trade are in full accord. Mr. Hill further testified he had known the appellant some twenty-five years, had traded cars with him a number of times, and considered him a good friend.

Clearly no bias or interest can be read into Mr. Hill's testimony, and since the appellant's testimony as to the transaction was in full accord with Mr. Hill's, no injury probably injurious to any substantial right of the appellant could be deemed to have resulted from the refusal of Charge I–2.

The State established a prima facie case by its evidence tending to show the possession in the appellant of the recently stolen automobile of Mr. Blakely. The burden was then upon the appellant of explaining his possession of such property, and the credibility and sufficiency of such explanation was for the jury, Melson v. State, 38 Ala.App. 514, 88 So.2d 851. We are clear to the conclusion that under the evidence the court properly submitted the case to the jury, and no error resulted from the refusal of appellant's two unnumbered requested charges which were affirmative in nature.

Charge J-3 was properly refused for use of the word "opinion" as a basis of the jury's determination of whether a confession is voluntary. The charge is also faulty in being an incorrect statement of the legal principle sought to be enunciated, and is not related to the issues of this case.

Charge I-1 was properly refused because of the ellipsis in failing to fill in the blank after the word "witness.".

The remaining refused charges were refused without error in that the principle sought to be enunciated in them were amply covered by other charges given at appellant's request, or by the court's oral charge.

A number of objections were interposed to certain statements made by the prosecutors during their arguments to the jury. We have considered all such objections and conclude that the statements were within the proper limits of forensic argument, and based on reasonable inferences from the evidence.

Affirmed.

## On Rehearing

### HARWOOD, Presiding Judge.

In his brief in support of the application for rehearing, counsel for appellant states that we made no specific reference to the refusal of appellant's requested charges I-3 and E-1. The principles sought to be covered by these charges, so far as they could be applicable to the issues raised in the trial below, were in our opinion fully covered in the court's oral charge, or the charges given at appellant's request.

These charges furthermore were faulty in one or more specific aspects.

■ Charge E-1 is misleading and argumentative as applied to the issues raised in the trial below. This requested charge reads:

"The Court charges the Jury that the humane provisions of the law is that upon the evidence there should not be a conviction, unless to a moral certainty, it excludes every other reasonable hypothesis than that of the guilt of the accused. No matter how strong may be the facts, if they can be reconciled with the theory that some other person' may have done the act, then the guilt of' the accused it not shown by that full' measure of proof the law requires."

The fact that the car in question was stolen was established without contradiction. The theory upon which the prosecution proceeded was that this appellant was in possession of recently stolen goods. That, some other person stole the car was an immaterial matter. The appellant's explanation of his possession of the recently stolen automobile was the real issue, and the worth of this explanation was for the jury.

■ Refused Charge I-3 was as follows: "I charge you that the evidence in this case is partly circumstantial, and before you would be authorized to convict the defendant the evidence must be so cogent as to exclude every reasonable hypothesis except that of guilt, and if you are not so convinced, then you should acquit the defendant."

Counsel in his argument that refusal of this charge was error relies upon Gilmore v. State, 99 Ala. 154, 13 So. 536, and Wiggins v. State, 25 Ala.App. 192, 143 So. 188, wherein it was held that the refusal of such charge was error.

However, the Gilmore case, supra, was, a prosecution for burglary, and the Wiggins, case, supra, concerned a charge of homicide.

Counsel argues that possession of recently stolen goods, in a prosecution for larceny' of the goods, is merely a circumstance tending to establish guilt, and therefore the guilt' of the accused under such evidence results from circumstantial evidence. This argument, as far as it goes, appears to be a correct statement of the law.

However, as stated in 32 Am.Jur., Larceny, Sec. 154:

"But the rule is universal that where an appellant testifies and admits the possession of stolen property, but claims his possession thereof was obtained in such manner as not to constitute theft, the case is not one of circumstantial evidence, except in cases where he claims the property as his own and there is no evidence not circumstantial which connects him with the original taking."

Clearly Charge I–3 was refused without error.

Other matters are argued in brief in support of appellant's application for rehearing. We think such were sufficiently covered in our original opinion.

Application overruled.