282 So.2d 692

Robert Spencer **JOHNSON**

v.

**STATE.**

**8 Div. 228.**

Court of Criminal Appeals of Alabama.

Feb. 27, 1973.

Rehearing Denied April 3, 1973.

———◆———

Jeff D. Smith and Nancy S. Gaines, Huntsville, for appellant.

William J. Baxley, Atty. Gen., and Sarah V. Maddox, Asst. Atty. Gen., for the State.

WILLIAM C. BARBER, Circuit Judge.

The Court has been presented with excellent briefs and arguments on behalf of the parties. In the brief and argument of the State of Alabama, the following statement appears: "Appellee adopts the statement of facts as outlined in Appellant's brief as being substantially correct". This Court having found the said statement of facts to be accurate, according to the record, hereby states the facts as stated by Appellant in his brief, as set forth hereafter.

The Appellant, Robert Spencer Johnson, while driving a brown Cadillac automobile at about 1:20 P.M. on March 17, 1971, with two young Negro passengers, was stopped for a minor traffic violation upon his entering Clinton Street after driving off the Memorial Parkway, a main traffic artery in Huntsville, Madison County, Alabama. Appellant was stopped by Huntsville Motor Scout Officer David Sharp. Prior to his halting the Appellant, the officer reported to the City dispatcher at the control office by radio that he was stopping this Cadillac on said Clinton Street. Officer Sharp testified that the car bore Madison County Tag Number 47–77929. After questioning the Appellant and learning that he had no driver's license, the officer requested over his radio that a check on the car be made to see if it had been stolen. Upon his contacting the City dispatcher, he was instructed to hold the car. Thus, having previously written the Appellant two traffic tickets, Officer Sharp detained the Appellant and the car until two city officers, Detective Stephens and Officer Kirkpatrick arrived.

One of the officers, Detective Curtis Stephens, testified that he had been working as a detective for about one year prior to this occasion. He first saw the Appellant standing by a bronze colored Cadillac with Motor Scout Sharp at around 1:30 P.M. on May 17, 1971, just west of the intersection of Clinton and Brown Streets. Upon arriving at the intersection he had a conversation with Officer Kirkpatrick. Then, Detective Stephens advised the Appellant of his constitutional rights by reading them from a small laminated card.

At this point in the trial, the Appellant's attorney requested voir dire examination of the witnesses, which was granted by the Court.

On voir dire examination, Detective Stephens was questioned as to whether or not he inquired as to Mr. Johnson's age. Detective Stephens stated that he was told that the Appellant was twenty (20) years old. The Honorable Trial Judge, David Archer, at this point in the voir dire examination of the witness, restricted the examination by defense counsel to the voluntariness of the statement and of the waiver of a search warrant, stating that inquiry into the age of the Appellant was beyond the question of voluntariness.

Upon further voir dire examination, Detective Stephens stated that neither prior to nor at any time after reading the Appellant the Miranda warnings, did he inform the Appellant that he was under investigation and suspicion of having committed a criminal offense.

At the end of the voir dire examination, the attorney for the Appellant objected to the introduction of any testimony concerning the search of the car which the Appellant was driving, on the ground that the prosecution had not met the burden of proving the voluntariness of the confession or of proving an intelligent or voluntary waiver of a search warrant. The Court overruled the objection but stated, " . . . then, if there is anything concerning the introduction of it you will have an objection to it throughout the entire questioning."

The Honorable Judge Archer then allowed Detective Stephens to testify in open court that the Appellant, in response to the question of if he had any tapes in the car, stated that he did have.

Detective Stephens testified that in response to a question of whether or not the Appellant would mind allowing the police to look through his car, the Appellant replied no.

Over timely objection of the defense that the waiver had not been proved to have been voluntarily or intelligently given, the State was allowed to introduce a waiver of the requirement of a search warrant signed by the Appellant.

After signing the waiver of search warrant, the officers searched the car and Officer Kirkpatrick made a list of the sixteen stereo tapes found in the automobile. The Appellant was then told to proceed.

Thereafter, the Detectives returned to the K Mart Department Store and talked with Mrs. Rachael McClintock. Mrs. Rachael McClintock had previously testified that she reported that her car, which she had parked on the K Mart Store parking lot on that day at about 8:30 A.M. had been broken into and three stereo tapes had been stolen from it.

After the conversation with Mrs. McClintock, the officers returned to 2811 Fairbanks Street, Huntsville, Alabama, and called the Appellant out of his home and advised him that he was under arrest. On pages 55–56 of the transcript, the following questions by Mr. Somerset, the Assistant District Attorney, are found:

"Q    What did you do then?

"A    We then retrieved the tapes.

"MR. SMITH: Now, we object to retrieving anything Your Honor.

"THE COURT: Overruled.

"MR. SMITH: We except.

"Q    What do you mean when you say you retrieved the tapes?

"A    We then took the tapes in question from the Defendant's automobile.

"Q    What were those three tapes, if you know?

"MR. SMITH: We object to that, may it please the Court.

"THE COURT: Overruled.

"MR. SMITH: Now Judge, at this time the car had been permitted to move and it was found in another location.

"THE COURT: I understand that, Mr. Smith. This would simply go to—this is

what he took from him. If he doesn't tie it in I will exclude it on motion.

"MR. SMITH: Well, we say there was an unlawful search and seizure.

"THE COURT: Well, of course, I have already ruled on that, Mr. Smith.

"MR. SMITH: Judge, that was down on Clinton Street. This is at 2811 Fairbanks Street, sometime later on that day. This is at another time and at another place. Now, we have gone over West Clinton Street, where he was stopped down there by the Motor Scout. He was told to proceed on. Now, he had signed an agreement down there, so the State says voluntarily, that they could search his car, located, I believe, at Seminole Drive and Brown Street. Then he was told proceed. Let me see that. Yes, it says Clinton Street and Seminole Drive. Then he was told to proceed. Now, at another time and at another place, at 2811 Fairbanks, without a warrant, without a search warrant, they go into that boy's car, or somebody's car.

"THE COURT: Well, I don't know whether that is true or not. He hasn't said so.

"MR. SMITH: He said he retrieved them from the trunk of the car.

"THE COURT: He didn't say how he retrieved them. I don't believe they had reached that point. I don't know how he got them myself. I don't know whether the jury does or not. I don't believe we have reached that point yet.

"Q How did you go about getting the tapes?

"A Well, when Robert came out I told him I wanted to talk to him. So he came on out. I then advised him, like I said, that he was under arrest for the offense. Then I asked him, you know, if he minded if we took the tapes from his vehicle. At this time I did not have him sign another waiver. He said, "No, that he didn't mind."

"Q He said no, he did not mind?

"A Yes, sir.

"Q So what did you do then?

"A We got the tapes.

"Q How many tapes did you get?

"A Three tapes.

"Q What were they, if you recall?

"A There was a Shiloh by Neil Diamond, Another Place, Another Time by Jerry Lee Lewis and Willie and the Poor Boys by the Clearwater Revival.

"Q Now, let me ask you this: Were those three tapes in this automobile when you searched it previously back down on Clinton Street?

"MR. SMITH: We object to that, that calls for a conclusion.

"THE COURT: Overruled.

"MR. SMITH: We say, Your Honor, that he got three tapes by that name and that they were in the car. We don't believe he can testify that those were the same three tapes.

"THE COURT: Well, I don't know whether he can or not, Mr. Smith. If he says he can then it will be for the jury to say whether they were or not.

"MR. SMITH: We except the ruling of the Court."

Detective Stephens further testified that the three tapes were shown to Mrs. McClintock who identified the tapes; and that afterwards the tapes were turned into the Evidence Room at the Police Department. Appellant's attorney objected to the testimony of identification as not being the best evidence. In fact, Mrs. McClintock was permitted to testify over the objection of the Appellant that the three tapes that the Policemen brought back to her were her tapes. The objection was that this was not the best evidence.

Two additional witnesses testified that between 12:00 Noon and 1:00 P.M., a gold or brown Cadillac car with two or three Ne-

**80**

gro boys were seen on the K Mart Department Store parking lot. One was William Haygood, a security officer at K Mart. The second witness was Thomas Farley.

Unquestionably, a part of the evidence was circumstantial in nature. Treating the subject of circumstantial evidence, the Trial Judge charged the jury in his oral charge as follows:

"In this case the State is relying upon circumstantial evidence. Circumstantial evidence is the proof of facts and circumstances in a case from which the Jury may infer other connected or related facts which usually and reasonably follow according to the common experiences of mankind. I will give you an example of circumstantial evidence. If we assume that before you retired last evening there was snow on the ground and that there was a tree in your yard. When you awakened this morning the ground was covered with snow and there were rabbit tracks leading from the tree in your yard away from the house, Ladies and Gentlemen, you would know that a rabbit was at that tree and since the snow had fallen the rabbit had departed therefrom. This is an example of circumstantial evidence."

Then, at the conclusion of the Court's oral charge, the Appellant requested the following charge:

"I charge you that the evidence in this case is partly circumstantial and before you would be authorized to convict the Defendant, the evidence must be so cogent as to exclude every reasonable hypothesis except that of guilt, and if you are not so convinced, then you should acquit him."

This charge was refused by the Trial Judge. This refusal constituted reversible error. In addition to the oral charge which would, in effect, render a limited definition of circumstantial evidence and gave an example thereof, Appellant was entitled to the further explication of the subject of circumstantial evidence as set forth in Charge 3, requested and refused by the Trial Court. In this instant case, the preponderance of the evidence is circumstantial and therefore the charges given by the Court are of paramount importance.

The case of Wiggins v. State, 25 Ala. App. 192, 143 So. 188, is authority for the firmly established principle that a refusal by the Trial Court to give a Defendant's requested charge concerning substantial matters more fully spelled out than those covered by the Court's oral charge is reversible error where the requested written charge states a correct legal proposition.

We find no need to rule upon the other principles urged by Appellant.

The foregoing opinion was prepared by Honorable William C. Barber, Circuit Judge, temporarily on duty on the Court pursuant to subsection (4) of § 38, T. 13, Code 1940, as amended; the Court has adopted his opinion as its own.

The judgment below is hereby

Reversed and remanded.

All the Judges concur.