[Simmons v. The State.]                    •

# Simmons *v.* The State.

*Indictment for Murder.*          . .

1. *Organization of jury; sufficiency thereof.*—Where, in the draw-
ing of a special jury for the trial of a capital case, the
court draws twenty-five names and orders that these sev-
eral jurors, together with the panel of petit jurors organized
for the week in which the trial of the defendant is set, shall
constitute the special venire from which the defendant shall
select a jury for his trial, the fact that the regular juries
empannelled for the week contained only twenty-four jurors,
furnishes no ground for quashing the special venire, and
such special venire is drawn and organized in accordance
with the statute.
2. *Same.*—In the trial of a capital case, the fact that several of
the jurors of the regular panel which constituted a part of
the special venire for the trial of the defendant's case were
at the time the defendant's case was called for trial, en-
gaged in the trial of another case, and had retired to the
jury room for the purpose of deliberation, constitutes no
good reason for delay in entering upon the trial of the de-
fendant.

[Simmons v. The State.]

3. *Homicide; admissibility of evidence.*—On a trial under an indictment for murder, a statement by the deceased, after he had received the fatal wound, which was made in the presence of the defendant, is admissible in evidence.

4. *Same; same.*—On a trial under an indictment for murder, a statement made by a brother of the defendant in the latter's presence, a few minutes after the killing, with reference to the killing of the deceased, is admissible in evidence.

5. *Evidence; admissibility of statements of deceased witness.* Secondary evidence of what the deceased or absent witness testified upon a former trial is only admissible upon a second trial between the same parties or their privies, and with relation to the same subject matter; and, therefore, in a trial under an indictment for murder, testimony of what a deceased witness testified on the trial of a person other than the defendant, for the same homicide, is inadmissible.

6. *Trial and its incidents; receipt of verdict on Sunday.*—A verdict may be received on Sunday and judgment be entered upon it on a subsequent day.

7. *Same; when receipt of verdict proper in absence of defendant's attorney.*—In a criminal case, when the bill of exceptions shows that the defendant was present when the verdict of the jury was received, and that an effort had been made to find the defendant's counsel, but that after several hours' delay and search he could not be found, and that thereupon the court appointed another attorney to represent the defendant and receive the verdict, and that the jury was polled, each of them declaring the verdict returned to be his verdict, no injury resulted to the defendant, and such action on the part of the court does not justify a reversal of the judgment of conviction.

8. *Homicide; charge to the jury.*—On a trial under an indictment for murder, a charge is erroneous and properly refused which instructs the jury that "Before the jury is authorized to convict the defendant as charged in the indictment they must believe from the evidence every other hypothesis but that of defendant's guilt has been excluded."

APPEAL from the Circuit Court of Cherokee.

Tried before the Hon. J. A. BILBRO.

The appellant, Joseph Simmons, was indicted and tried for the murder of Houston Webb, was convicted of murder in the second degree, and sentenced to the penitentiary for a term of twenty years.

The regular juries as organized for that week were

composed of twenty-four persons. On Monday of the second week the defendant was arraigned, pleaded not guilty, and the court fixed Thursday of said week as the day for the trial of the defendant, and ordered that twenty-five names be drawn from the jury box as special jurors for the trial of the defendant. Thereupon the jury box was brought into court, and, after being well shaken, the presiding judge publicly drew therefrom the names of twenty-five persons as qualified jurors and directed the clerk to make a list of said names drawn therefrom and that the sheriff summons these persons to appear on Thursday as special jurors in the defendant's case, and that the special jurors so drawn from said box, together with the panel of petit jurors organized for the week, should constitute the *venire* from which to select a jury for the defendant's trial. It was further ordered by the court that the sheriff serve a copy of the *venire,* together with a copy of the indictment, on the defendant one entire day before the day set for defendant's trial.

On the day fixed as the day for the defendant's trial his case was called and the State announced ready. Six of the jurors on the regular juries impannelled for that week were engaged in the trial of another case, and were out in the consideration of said case at the time the defendant's case was tried. Thereupon the defendant objected to being put upon trial before the remaining jurors, upon the following grounds: "1st. There was not a legal *venire* from which to make up a jury. 2d. Because the *venire* as it then stood was not authorized by law. 3d. Because there were less than fifty jurymen on the special *venire* from which to make up a jury to try his case." The court overruled this motion, and the defendant duly excepted. Thereupon the defendant moved the court to quash the *venire* upon several grounds, as above stated. The court overruled this motion, and the defendant duly excepted.

The evidence for the State showed that Houston Webb was killed at the home of Jim Simmons, brother of the defendant. The evidence tending to show the circumstances of the killing were circumstantial. It was shown that the deceased was acting as deputy

sheriff, and, in company with one John Williams, went to the house of Jim Simmons to arrest the defendant, Joseph Simmons, and that he was shot shortly after he entered the yard to Jim Simmons' house. John Williams, a witness for the State, testified that he went with the deceased to the house of Jim Simmons for the purpose of arresting the defendant; that as they got to the house he went in one direction expecting to come up in the rear of the house while the deceased went to the front of the house. That in a short time he heard several shots; that he then ran towards the house and that when he reached there Jim Simmons and the defendant came out of the back door of the house and levelled their pistols upon him, and upon his asking them to let him see Houston Webb, John Simmons told him he could go and see him; that he then went to where Webb had fallen on the ground and John Simmons and the defendant followed him; that when he got to Houston Webb he asked him who shot him; that when he asked this question both the defendant and John Simmons were within a few feet with their pistols in their hands and were close enough to hear the question. The defendant objected to the witness stating what the defendant said in answer to his question as to who shot him, upon the ground that it was illegal, irrelevant and incompetent. The court overruled the objection and the defendant duly excepted. The witness then stated that the deceased pointed towards the defendant, who was but a few feet away, and said that he was the man who shot him; that the defendant never spoke a word in reply to this statement of the deceased. The witness further testified that when he first got to Webb he asked him if John Simmons shot him; that Webb said no, and then pointed to the defendant and said that he was the person who shot him. The solicitor for the State then asked the witness if John Simmons said anything more than the witness had already stated, when he asked him to let him see Webb. The defendant objected to this question on the ground that it was illegal, irrelevant and incompetent, and duly excepted to the

court's overruling his objection.    The witness then
stated that when he asked to see Webb John Simmons
said "We have one d— s— of a b— shot down around
there."

There was evidence introduced for the defendant
tending to show that he did not shoot Houston Webb.
It was also shown by the evidence that Mrs. John
Simmons had been indicted and tried for the murder
of the deceased and that she had been acquitted.    The
defendant offered to prove what Mrs. House, a wit-
ness for the State, on the trial of Mrs. John Simmons,
charged with the murder of the deceased, testified to;
it being shown that Mrs. House had died since the
said trial.    The State objected to the introduction of
this evidence, the court sustained the objection, and
the defendant duly excepted.    As to the receipt of
the verdict, the bill of exceptions is as follows: "Sun-
day, July 22, 12:15 p. m.    Jury announced that they
had agreed on a verdict.    Defendant was brought into
the court room and solicitor who prosecutes for the
State and clerk and sheriff being present the court di-
rected the sheriff to send a deputy for defendant's
counsel and to inform him that the jury had agreed
and the court was ready to receive the verdict.    The re-
turn of the officer was that the defendant's attorney was
not in town.    The court, upon examination, ascertained
this to be true.    The court then directed a recess for a
few hours to obtain the presence of defendant's attor-
ney.    At 5 p. m. the court was again informed the de-
fendant's attorney could not be had, that the defend-
ant's attorney was not in town.    The jury reported
again that they were ready with their verdict.    The de-
fendant being in court and also the solicitor and officers
of the court, the solicitor moved the court to receive
the verdict of the jury, it being made known to the
court that the absence of the defendant's attorney was
by his own fault.    The court thereupon appointed Jo.
L. McConnell, an attorney of the court, to represent the
defendant on receiving the verdict of the jury.    The
said McConnell was then and there present in court
and accepted said appointment and represented said de-
fendant on receiving the verdict of the jury.    The de-

fendant then objected to receiving the verdict of the jury because of the absence of his attorney who represented him on his trial and because it was Sunday. Said objections were overruled and the defendant then and there duly excepted to the ruling of the court, and the verdict was received. The jury was then polled at the request of the defendant and each juror answered for himself that the verdict rendered was his verdict, and the jury was then discharged. And defendant objected to the ruling of the court in discharging the jury."

The court gave several of the charges requested by the defendant, but refused to give the following written charges, to which refusal the defendant separately excepted: "Before the jury is authorized to convict the defendant as charged in the indictment they must believe from the evidence every other hypothesis but that of the defendant's guilt has been excluded."

C. DANIELS, for appellant, cited *State v. Oliver*, 2 So. Rep. 194; Wharton's Crim. Law, 262; Roscoe's Crim. Evidence, 263; *Degan v. State*, 105 Ala. 21; *Hughes v. State*, 2 Ala. 102; *Ex parte Ryan*, 44 Ala. 102; *Sylvester v. State*, 71 Ala. 17.

CHAS. G. BROWN, Attorney-General, for the State.

DOWDELL, J.—The special venire from which the jury was selected for the trial of the defendant was drawn and organized in accordance with sections 5004-5005 of the Code of 1896, and the court; therefore, properly overruled the motion to quash the venire. Because several of the jurors of the regular panel, which constituted a part of the special venire, were, at the time of the defendant's case was called for trial, engaged in the trial of another case, upon which they had retired to the jury room for the purpose of deliberation and making a verdict, constituted no good reason for delay in entering upon the trial of the defendant.

There was no error in the court's action in admitting statements by the deceased, made in the presence of

the defendant, after he had received the fatal wound, nor was there error in admitting statements made by John Simmons, brother of the defendant, in the defendant's presence.

Evidence of Mrs. House, given on a former trial in the case of *The State of Alabama v. Maley Simmons,* was properly excluded. The evidence of a deceased or absent witness given upon the former trial is only admissible upon the second trial between the same parties or their privies and in relation to the same subject matter. Here the parties were not the same, nor was there any privity.

The verdict, it appears, was received by the court from the jury on Sunday. In this there was no error. *Reid v. State,* 53 Ala. 402; *Chamblee v. State,* 78 Ala. 466. There is nothing in the record from which it can be said or inferred that the judgment was entered on that date—Sunday. In support of the judgment, nothing otherwise appearing of record, it will be presumed that the judgment on the verdict was rendered on a subsequent day of the court.

The bill of exceptions shows that the defendant was present when the verdict was received, and that an effort was made to find defendant's counsel, but that after several hours' delay and search he could not be found. The court thereupon appointed another attorney at the bar to represent the defendant in receiving the verdict of the jury. The jury was duly polled. Certainly no injury resulted to the defendant from this action.

The court gave several written charges at the request of the defendant, and refused one, and this one is so palpably bad as to need no further comment.

We find no reversible error in the record, and the judgment of the circuit court must be affirmed.