[Sanford v. The State.]

# Sanford *v.* The State.

## *· Indictment for Murder.*

1. *Criminal law; evidence; testimony of absent witness given on former hearing.*—Where a magistrate, on the preliminary trial of a defendant charged with a felony, takes down in writing the testimony given therein by a witness, he cannot, on the trial by jury, testify as to what such witness said on examination in the preliminary trial, as the written notes of his testimony is the best evidence thereof.

2. *Same; same; res gestae.*—On a trial for murder, it is improper to ask a witness, who testifies to a dying declaration by the person charged to have been murdered, whether the deceased said he had beat up a third person, unless it be known that such declaration is part of the *res gestae.*

3. *Same; homicide; evidence.*—In a trial for murder, it is inadmissible to show that the deceased, who had said he knew he was dying, said to a party "You know how this shooting was done, you know the cause of all of it; you know how this thing happened; it was all uncalled for, the trouble was between you and I, and not any of his trouble at all."

4. *Same; witness; bias.*—It is proper to ask a witness if he was not unfriendly with the party against whom he testifies, but a question to the witness whether he was indebted to such party is improper.

5. *Homicide; justification; evidence.*—Where, on a trial for murder, the defendant seeks to justify the homicide by showing that the deceased had a difficulty with a third person, whom he was attempting to kill, and that defendant killed the deceased to prevent murder by him, the availability of the defense will depend upon the attitude of such third person to the original difficulty, and evidence of the circumstances of such original difficulty is admissible.

6. *Same; witness.*—Where a witness has testified that she became unconscious at one stage of a transaction, it is proper to ask her condition as to consciousness at another stage.

7. *Same; evidence of prior difficulty.*—On a trial for murder, evidence of the particulars of a prior difficulty between the defendant and the deceased is inadmissible.

[Sanford v. The State.]

8. *Same; evidence.*—Where, in a trial for murder, a statement of the deceased is given in evidence, it is proper to ask a witness whether, at the time of making the statement, the deceased had any whiskey in him.

9. *Trial and indictments; remarks of counsel.*—Remarks of counsel in argument, based upon evidence which had been excluded from the jury, are objectionable, and objections thereto are properly sustained.

10. *Verdict; Sunday.*—Where a verdict is brought in by the jury on Sunday, and is then read in the presence of the judge, the sheriff, the jury and the defendant, and the jury is then discharged, and on the following Monday, the defendant being in open court, the verdict is there read and entered by the court, the proceeding is regular and will support judgment and sentence.

11. *Juror; qualification; challenge.*—It is the duty of the Court to ascertain the qualifications of a juror, and when it ascertains that he is disqualified, either by his own oath, or otherwise, a challenge for cause should be sustained.

12. *Same; supplying place of sick juror.*—Where a juror, who has been accepted, becomes sick before being sworn, his place may be supplied without proceeding anew to empanel another jury.

13. *Same: juror living over two miles from Court House.*—Under the statute, Local Acts 1900-01, p. 2002, where the name of a juror is drawn, who lives more than two miles from the court house, his name may be laid aside, and another name drawn from the box in his stead.

APPEAL from the City Court of Montgomery.

Tried before Hon. WILLIAM H. THOMAS.

In this cause the appellant was tried upon an indictment charging him with the murder of one Jim Achors. The defendant was found guilty of murder in the second degree, and appeals.

In the process of empanelling the jury, one H. J. Talley's name was called. In answer to questions of the court, on his examination as to his qualifications as a juror, he said that he had no fixed opinion against capital punishment, and was thereupon declared by the court to be a competent juror. Thereupon, the solicitor, by consent of court, asked the juror, if he had not sworn on the day before, when he was called to act as a juror in a capital case, that he had a fixed opinion against

capital punishment. He answered that he did so swear. Being asked whether his present answer, or the one he made on the day before, was correct, he answered that his statement of the day before was correct. Thereupon the solicitor challenged the juror for cause, which was allowed. The name of one A. L. Barnett was called as a juror, and he was accepted as such by both the State and the defendant, but, before the panel was completed, and before he was sworn, he was taken sick, and he was excused by the court. Thereupon the defendant moved to proceed to select anew the entire jury. This motion was overruled.

The venire being exhausted, and the jury being still incomplete, the judge ordered the jury box to be brought into court, and proceeded to draw therefrom names to complete the jury. In this process, the name of one John Jones was called. It was shown to the court that the said Jones resided more than two miles from the court house, whereupon the court ordered that he should not be summoned, and laid his name aside and drew from the box a name in his stead.

The jury being complete, the trial was entered upon, when the State called as a witness, Tim Allbright, who swore that he was a brother of one Jim Allbright. That the last time he saw his brother was about two months prior to the trial, when he said that he intended leaving Birmingham, where he then was, and going to Columbus, Ga. That he did not know whether or not he left, or whether he was in this State or not. Thereupon, under exceptions of defendant, one R. H. Jones was examined as a witness for the State. This witness swore that he was a justice of the peace for Montgomery county; that, as such, he held the preliminary trial of the defendant on the charge for which he was then being tried; that, on such preliminary trial, the said Jim Allbright was examined, and that his testimony was taken down in writing by the witness. The witness then swore that, on such preliminary examination, Jim Allbright swore that he saw the difficulty which resulted in the death of said Achors; that he was, at the time, in the store of de-

fendant; that he heard a noise in the kitchen, which adjoined and opened into the store; at that time, defendant, in the store, was washing the floor with a hose; immediately after hearing the noise, Harry Hammett, his sister, Maggie Hammett, and the deceased, ran out of the kitchen into the store; that Harry was in front, his sister immediately behind him, and the deceased, Achors, just behind her; that Achors had hold of Maggie. That defendant got a pistol from a shelf, and pointed it at Achors, and, when between twelve and fifteen feet apart, began firing, and deceased held Maggie before him, dodging behind her. Defendant, when firing, was behind the counter; his third shot struck Achors in the stomach, who thereupon picked up a beer glass, struck defendant, and climbed over the counter, where they scuffled, and another shot was fired.

The State introduced evidence of dying declarations by Achors, to the effect that Sanford killed him without any cause whatever. It is unnecessary, for an understanding of the opinion, to set out the testimony of various witnesses as to the circumstances of the killing. But, as bearing on the opinion, it should be stated that one Allen, who testified to a dying declaration by Achors, was asked the question, "He did not say that he had beat up young Hammett, did he?" Objection to that question was sustained. Another witness, E. W. Graham, testifying to a dying declaration, in answer to a question as to what the deceased said, answered that he spoke to Maggie Hammett, and said, "Maggie, you know how this shooting was done, you know the cause of it all and how this happened; it was all uncalled for, for the trouble was between you and I, and not any of his trouble at all." On the examination of a witness, Maxey, the court sustained objections to two questions asked by the defendant, as follows: "Is it not a fact that you and Sanford are unfriendly on account of a whiskey bill you owe him?" "Is it not a fact that you owe the defendant money for whiskey?"

6s

[Sanford v. The State.]

The defendant introduced, as a witness, Maggie Hammett, and offered to prove by her that, immediately before the killing, she was in the kitchen, adjoining and opening into the store of the defendant, with the deceased and her brother, Harry Hammett; that the deceased there assaulted and tried to kill her, and also attacked her brother. That they ran into the store where the defendant was. The court refused to allow any testimony as to what occurred in the kitchen between the witness, the deceased and Harry Hammett. The witness testified that, when the shooting began, she became unconscious. Further proceedings on the trial sufficiently appear in the opinion.

The following written charges requested by the defendant were refused: "16. The defendant cannot be convicted, unless the evidence is inconsistent with any reasonable theory of innocence." "18. If the jury do not believe the evidence, they must find the defendant not guilty." "A. If the jury cannot reconcile the evidence, and there is one theory of guilt, and the other is the innocence of the defendant, and both are reasonable, then the jury cannot convict the defendant."

HILL, HILL & WHITING, for appellant.

MASSEY WILSON, Attorney-General, contra.

SIMPSON, J.—The defendant (appellant) was tried under an indictment for murder and convicted of murder in the second degree. Taking the exceptions in the order mentioned in appellant's brief:

Apart from the consideration as to whether a sufficient predicate was laid, the court erred in permitting the witness R. H. Jones, who was the justice of the peace before whom defendant had been tried on preliminary trial, and who had taken the testimony of the witness, Albright, in writing, to testify as to what said witness' testimony was. The writing was the best evidence of what he testified to.—Matthews v. State, 96 Ala. 62; Harris v. State, 73 Ala. 495.

[Sanford v. The State.]

There was no error in sustaining the objection by the State to the question to the witness Allen, "He didn't say that he had beat up young Hammett, did he?" There was no evidence that the declaration called for was a part of the *res gestae.—Sullivan v. State,* 102 Ala. 136, 141-2.

The remark of deceased, to Maggie Hammett, was not such dying declaration as came within the case above referred to and should have been excluded.—*Sullivan's case, supra.*

The question to the witness, Maxey, "Is it not a fact that you and Sanford are unfriendly on account of a whisky bill that you owe him?" was legitimate on cross-examination, in order to show the state of feeling between the witness and the defendant; consequently, the court erred in sustaining the State's objection to this question. The objection of the State to the next question to said witness, to-wit: "Is it not a fact that you owe the defendant money for whiskey?" was properly sustained.

There is testimony tending to show that the deceased was in some difficulty in the kitchen, just prior to the killing; that he came from the kitchen into the store pursuing one Hammett and firing at her and saying, "I will kill the whole damned shooting match." One of the matters of defense set up is that deceased was in the act of attempting to kill Hammett, and the defendant had the right to kill him to prevent the commission of said crime. As to whether the defendant could justify on this ground would depend on the attitude of Hammett to the original difficulty, and it would be necessary to prove the circumstances of said original difficulty in order to determine that matter. Consequently, the court was in error in refusing to allow the defendant to prove the particulars of that difficulty.—*Wood v. State,* 128 Ala. 27; *Karr v. State,* 106 Ala. 1.

The numerous questions of the State, to the witness Maggie Hammett, inquired about irrelevant and immaterial matter which should have been excluded, except that it was legitimate to show the part taken by de-

·ceased and her brother in the fight in the kitchen, and that it was a continuous fight or chase until the defendant intervened, if such were the facts. As to what she said about going off from defendant's store, and saying that everything in the store was hers, and opening up a store of her own; saying that Achors was shot for nothing; what was said about the deceased "Meddling with Sanford;" about Achors asking her if there were any cartridges in the pistol; were immaterial and rendered particularly so by her uniform answer, "I don't remember."

The question of the witness, M. F. McDonald, as to what Maggie Hammett said to him, after the shooting, and the answer thereto, to-wit: that everything in the store was hers, were clearly irrelevant as the record stood.—Carter v. State, 133 Ala. 160, 162.

It was competent for the State to ask the witness Maggie Hammett, "What was her condition as to consciousness then?" as she had previously testified that she had become unconscious, and it was proper to know whether she had fully regained her consciousness. The objections of the defendant to this question were properly overruled.

The court properly sustained the objection of the State to the question to the witness Boyd, "Did you hear the man say that he was going to kill anybody?" The question was too general, not stating which man was referred to, nor showing that it had any reference to any one connected with this case.—Pitts v. State, 140 Ala. 70, 83.

The objections of the State to the questions to the defendant when on the stand, as to the particulars of the prior difficulty between defendant and deceased, were properly sustained.—Rutledge v. State, 88 Ala. 85; Jones v. State, 116 Ala. 469; Harkness v. State, 129 Ala. 71, 78; Longmire v. State, 140 Ala. 66, 68.

The objections by the State to the questions to Dr. Hill, about smelling whiskey on the deceased and as to whether he had any whiskey in him, should have been overruled. This evidence was competent for the purpose of showing the state of his mind when he made the state-

ment.—*Campbell v. State,* 23 Ala. 44, 58; *John Morris v. State,* in MS.

The remarks of counsel for defendant, in argument, were in regard to a matter, the evidence of which had been excluded from the jury, and the objection to the remarks was properly sustained.

Charge 16, requested by the defendant, asserts a correct principle of law, and should have been given. *Bowen v. State,* 140 Ala. 66, 70; *Pickens v. State,* 115 Ala. 42, 50.

Charge 18 requested by the defendant was properly refused.—*Hampton v. State,* 133 Ala. 180; *Koch v. State,* 115 Ala. 100.

Charge "A" requested by the defendant was properly refused. The charge does not state that the theories are based on the evidence, and, besides, the jury may be unable to reconcile the evidence, and yet may deem that which supports one theory credible, and that which supports another incredible.

The record shows that the verdict of the jury was brought in and read on Sunday at 12:15 o'clock, "In the presence of the associate judge of the court, the sheriff, the jury and the defendant;" that the jury was discharged, and, on the next day, (Monday) "The defendant being in open court, and said verdict being read in open court and entered by the court," etc., the judgment of the court was pronounced. This was legal, in accordance with the previous decisions of this Court, and the defendant had the same opportunity to poll the jury as he would have had, if the verdict had been brought in on a juridical day.—*Simmons v. State,* 129 Ala. 41, 47; *Chamblee v. State,* 78 Ala. 466, 469; *Reid v. State,* 53 Ala. 402, 406, 410.

There was no error in sustaining the challenge by the State of the juror Tally for cause. Although the said juror first answered that he had no fixed opinion against capital or penitentiary punishment; yet, when he was further questioned by the solicitor, he acknowledged that he had, on the day previous, sworn that he did have a fixed opinion against capital punishment, and when

asked which statement was correct he replied, "That the statement he made on yesterday was." This was equivalent to saying that he had a fixed opinion against capital punishment. It was made the duty of the court to ascertain the qualifications of the juror, and when the court ascertains that he is disqualified, either by his own oath or otherwise, it is its duty not to allow him to be sworn, when challenged.—Code of 1896, §§ 5010, 5018.

The juror Barnett was evidently sick and not in a fit condition to serve on the jury and was properly excused. Code 1896, §§ 5019-20. And there was no reason why his place should not be supplied without proceeding anew to empanel another jury.—*Yarbrough v. State,* 105 Ala. 43.

It was not necessary to delay the business of the court by sending for jurors whose names were drawn from the additional slips placed in the box, and who resided two miles from the court house. The court pursued the proper course.—Local Acts, 1900-01 p. 2002.

The judgment of the court is reversed and the cause remanded.

TYSON, DOWDELL, ANDERSON and DENSON, J.J., concurring.