This is an appeal from the denial of a pro se petition for writ of error coram nobis.
The appellant, Ronald Wayne Gwin, and his brother were charged in separate indictments with the murders of Ralph Little and Donald Ray Faulkner. Gwin's brother was tried first and convicted for Little's murder. Gwin v. State, 425 So.2d 500
(Ala.Cr.App. 1982), cert. quashed, 425 So.2d 510 (Ala. 1983).
 I
Gwin was tried and convicted for manslaughter in the case involving Faulkner while his brother's case was on appeal and before it had been affirmed. He gave notice of appeal, trial counsel was appointed to represent him on appeal, and a transcript was prepared. Before the appellate briefs were filed, Gwin pled guilty in the case involving Little. This guilty plea was pursuant to a plea bargain agreement whereby Gwin pled guilty to the lesser included offense of manslaughter in the case involving Little, dismissed his appeal of the Faulkner manslaughter conviction, and received a ten-year sentence to run *Page 848 
concurrent with the ten-year sentence he received in the Faulkner case. Gwin did not attempt to appeal this guilty plea. Fifteen months later, he filed a petition for writ of error coram nobis attacking the sufficiency of the evidence to support the Faulkner conviction and alleging that he did not knowingly and voluntarily waive his right to appeal.
Counsel was appointed and an evidentiary hearing held on the allegations of Gwin's petition. On this appeal from the denial of that petition, Gwin contends that "[b]ecause appellant never `knowingly' waived his right to appeal and because no appeal was ever taken he has a jurisdictional basis for this petition assuming he has a valid defense."
Initially, it should be noted that the petition itself is not verified and does not constitute evidence. See Ex parte Green,221 Ala. 298, 300, 129 So. 72 (1930).
At the hearing, Gwin testified but never specifically or clearly stated that he did not know what he was doing when he waived his right to appeal, that he did not understand the consequences of dismissing his appeal, or that the waiver was not knowing and intelligent. He only stated that he pled guilty "under the direction of my attorney."
Gwin testified that during his trial his appointed counsel, Al Shumaker, "told me all the way through my trial that he was laying the groundwork for an appeal." Gwin stated that Shumaker's advice that he plead guilty and "drop" the appeal "contradicted what he told me all through the trial."
At the coram nobis hearing, Shumaker testified that the basis for his recommendation that the appeal be dismissed was that he "felt like the chance of getting the case reversed on appeal was not real great. . . . I felt like the thing that we needed in order to insure a reversal, an obvious error, I did not think had occurred." This recommendation was made after he had reviewed the trial transcript.
 "I felt like the chance on appeal was not all that great and if we could plea bargain a concurrent sentence and dismiss the appeal, it appeared to me probably the best thing that he could have done. Now, we discussed it and I don't ever advise a person to plead guilty to anything. I tell them what the options are and sometimes I encourage them to the point that I say I think this, you know, is the best thing for you to do, but ultimately the plea is the decision of the client.
 "Q. All right. Did you coerce Mr. Gwin in any way to get him to enter the plea in the second charge?
 "A. Certainly not. We discussed it on a number of occasions and at first I don't think he wanted to do it, and it was over a period of several weeks time that he made the decision. It may have been several months before he made the decision."
Contained in the record is a Case Action Summary Sheet containing the signed orders of the trial judge. This record shows that Gwin's guilty plea was voluntary and intelligent: "The court determined that there was a basis of fact for the defendant's plea of guilty and that such plea was made voluntarily, intelligently and with an understanding waiver of his rights and without coercion." Although the trial judge informed Gwin of his right of appeal on May 6, 1982, no appeal was ever taken on the guilty plea. The pro se petition for writ of error coram nobis was filed in August of 1983.
Although there is some authority to the contrary, a defendant may waive his right to appeal as part of a negotiated plea agreement. Annot., 89 A.L.R.3d 864 (1979). The defendant's mere unhappiness with the condition of a plea bargain whereby he waives his right to appeal does not amount to coercion so long as the defendant was fully advised of this condition and its implications and he voluntarily agreed to it. People v. Jasper,107 Misc.2d 992, 436 N.Y.S.2d 185 (1981). Here, Gwin has not shown that his decision to withdraw his appeal was not made on the basis of an *Page 849 
informed and reasoned judgment, cf. Staton v. Warden,175 Conn. 328, 398 A.2d 1176 (1978), but admits that it was on the advice of counsel. There is no allegation or evidence of "prosecutorial vindictiveness". Staton, 398 A.2d at 1178.
In a coram nobis proceeding, the petitioner has the burden of proving the allegations of his petition. Shaw v. State, 283 Ala. 555,558, 219 So.2d 382 (1969). This burden extends to a petitioner who claims that his guilty plea was involuntary. Warev. State, 44 Ala. App. 679, 219 So.2d 910 (1969); Champion v.State, 44 Ala. App. 660, 219 So.2d 416 (1969). "This burden extends beyond a mere balancing of probabilities." Summers v.State, 366 So.2d 336, 343 (Ala.Cr.App. 1978), cert. denied,366 So.2d 346 (Ala. 1979).
 "The degree of proof is `highly exacting as to facts "and always means more than reasonably satisfying."' Burden v. State, 52 Ala. App. 348, 350, 292 So.2d 463, 465 (1974). The petitioner must convince the trial judge of the truth of his allegation and the judge must `believe' the testimony. Seibert v. State, 343 So.2d 788 (Ala. 1977). The petitioner on coram nobis is also confronted with the burden of rebutting the presumptions, among others, of the correctness of the judgment of the trial court, Ware v. State, 44 Ala. App. 679, 219 So.2d 910 (1969), and the truthfulness of the testimony of the witnesses for the prosecution. Edson v. State, 53 Ala. App. 460, 301 So.2d 226 (1974)." Summers, 366 So.2d at 343.
The trial court's judgment is presumed correct, as is the voluntariness of a guilty plea. See Howard v. State, 280 Ala. 430,433, 194 So.2d 834 (1967) ("[T]here is a presumption of reliability which attaches to the recital in a judgment entry and we do not think that ordinarily that presumption can be overcome by the mere statement of a petitioner that the judgment entry is incorrect."). The record does not convince this Court that Gwin sustained his burden of proving that the waiver of his right to appeal was not knowingly made. Hayes v. State, 417 So.2d 579
(Ala.Cr.App. 1982); Clark v. State, 396 So.2d 1083 (Ala.Cr.App. 1981). Neither has Gwin demonstrated that counsel was constitutionally inadequate in advising him to dismiss his appeal. Considering the evidence against Ronald Gwin and the fact that a jury convicted him only of the lesser included offense of manslaughter, we find no cause to question Shumaker's competence at trial. Gwin has presented nothing to cause us to doubt Shumaker's assessment and advice in regard to the guilty plea, the acceptance of the plea bargain agreement, and the dismissal of the appeal. Here, as in Ex parte Ellison, 410 So.2d 130, 132
(Ala. 1982), a reading of Gwin's petition "convinces this Court that he is seeking to use the writ as a delayed appeal of issues which could have been decided at the initial trial or on direct appeal." That is not the function of the writ. Summers, 366 So.2d at 339.
 II
Moreover, we find no merit to the matters Gwin cites as errors in his trial.
In his petition, Gwin argues that "blacks were systematically excluded from the petitjury, that the State failed to prove the corpus delicti; that certain evidence known to State's attorney that could have impeached the testimony of a key witness (Margaret Hunter) was intentionally suppressed; that new evidence in the form of testimony from James Edward Gwin would absolve your Petitioner from any wrong doing." The competence of trial counsel (Al Shumaker) is also questioned.
The record of Gwin's trial was introduced into evidence at the coram nobis hearing and is a part of the record on this appeal. Included are the clerk's record and the transcript of the court reporter.
 A.
Defense counsel did file a motion to quash the jury venire but on the grounds that a number of jurors had been improperly excused. The record contains no allegation or evidence of systematic exclusion. Since this objection was not raised *Page 850 
at trial, Gwin is precluded from presenting it before this Court.Van Antwerp v. State, 358 So.2d 782, 791 (Ala.Cr.App.), cert. denied, Ex parte Van Antwerp, 358 So.2d 791 (Ala. 1978). An attack on the jury selection system not raised in the original trial court cannot properly be raised for the first time on a petition for writ of error coram nobis. Thigpen v. State,374 So.2d 401, 405 (Ala.Cr.App.), cert. denied, 374 So.2d 406 (Ala. 1979).
 B.
Gwin contends that at his trial the State intentionally suppressed a statement witness Margaret Hunter had given to District Attorney's Investigator Danny Smith on January 5, 1981. That unsigned statement is included in the record along with Ms. Hunter's testimony at Gwin's preliminary hearing and her testimony at the trial of Gwin's brother.
The motion to produce, filed by defense counsel before Gwin's trial, did not seek the production of the statement of any witness. There was no general request for evidence favorable to the accused under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194,10 L.Ed.2d 215 (1963). The transcript of Hunter's testimony at the trial of Gwin's brother reveals that defense counsel (Loma Beaty) requested and received a copy of Hunter's statement to Investigator Smith and used this in his cross examination of the witness. This trial was held before Gwin's.
The record reflects that Gwin was present and "remained in the courtroom for a portion of . . . [his brother's] trial when he was brought to the courthouse as a witness."
The transcript of Hunter's interview by Smith does contain some discrepancies from her testimony at trial and at the preliminary hearing. It could have been used to impeach her trial testimony. However, those discrepancies are not so significant as to require a reversal of Gwin's conviction had this issue been raised at trial or on motion for new trial. This issue was first raised in the coram nobis petition. Consequently, this issue was not even preserved for direct appeal.
A prosecutor's failure to disclose favorable evidence when a defendant makes a general request for Brady material, or no request at all, will require a reversal only if the undisclosed evidence would create "a reasonable doubt that did not otherwise exist." United States v. Agurs, 427 U.S. 97, 112, 96 S.Ct. 2392,2402, 49 L.Ed.2d 342 (1976); United States v. Xheka,704 F.2d 974, 983 (7th Cir.), cert. denied, ___ U.S. ___, 104 S.Ct. 486,78 L.Ed.2d 682 (1983); United States v. Cochran, 697 F.2d 600,607 (5th Cir. 1983). Here, it is certain that Hunter's statement to Investigator Smith would not have created "a reasonable doubt that did not otherwise exist." Gwin's trial counsel was thorough and competent in his cross examination of Hunter. Thus, even had this issue been preserved for review on direct appeal it would not warrant a reversal of the conviction.
 C.
Gwin argues in his petition that his mere presence at the scene of a crime does not make him an accomplice. This was the substance of his defense and testimony at trial. Our review of the trial transcript convinces us that the State presented a prima facie case.
Ms. Hunter testified that Eddie Gwin lost some money in a dice game and said he was "going to kill somebody or get — and get his money back." Eddie, Gwin, and Ms. Hunter went to Gwin's trailer where Eddie and his father got a pistol. Then Eddie and Gwin went into their bedroom and got a shotgun. Ms. Hunter, Eddie and Gwin then left the trailer and drove until they "came across" the van that had been at the tavern where Eddie lost his money. Eddie got out of the truck and shot the two men in the van. Gwin remained in the truck until Eddie told Gwin to get out and bring the shotgun. Gwin then got out and stood beside the truck door. Hunter covered her face when she saw Gwin "was fixing *Page 851 
to start shooting." Eddie called to Gwin to come to where he was. Gwin put the shotgun back in the truck and Eddie and Gwin started going through one of the boys' pockets. Eddie then told Hunter and Gwin what to tell the police if they were questioned.
In a voluntary statement Gwin gave Investigator Smith, Gwin admitted his presence at the scene of the homicides and maintained that he had no prior knowledge of Eddie's intention to kill the two men. Gwin does admit that he brought the shotgun to Eddie at Eddie's request and that Eddie fired the shotgun after he had given it to him.
This evidence was sufficient to support a conviction under the principles stated in Cumbo v. State, 368 So.2d 871 (Ala.Cr.App. 1978), cert. denied, Ex parte Cumbo, 368 So.2d 877 (Ala. 1979). Here, there was undisputed evidence that Gwin was present at the scene of the crime as well as testimony from which the jury could infer that he knew his brother was ready to kill to get his money back, and that Gwin was ready and willing to help his brother in the commission of the murders, and therefore guilty as an accessory. Alabama Code § 13A-2-23 (1975).
"Aid and abet `comprehend all assistance rendered by acts or words of encouragement or support or presence, actual or constructive, to render assistance should it become necessary.'"Jones v. State, 174 Ala. 53, 57, 57 So. 31 (1911), quoted inRadke v. State, 292 Ala. 290, 292, 293 So.2d 314 (1974). If the jury is convinced beyond a reasonable doubt that the defendant was present with a view to render aid should it become necessary, the fact that the defendant is an aider and abettor is established. Jones, supra; Raiford v. State, 59 Ala. 106, 108
(1877). "The culpable participation of the accomplice need not be proved by positive testimony, and indeed rarely is so proved.Fuller v. State, 43 Ala. App. 632, 198 So.2d 625. Rather, the jury must examine the conduct of the parties and the testimony as to the surrounding circumstances to determine its existence." Millerv. State, 405 So.2d 41, 46 (Ala.Cr.App. 1981); Watkins v. State,357 So.2d 156, 159 (Ala.Cr.App. 1977), cert. denied,357 So.2d 161 (Ala. 1978).
 D.
Gwin contends that the trial judge erred in refusing to admit a record of the testimony of his brother at the brother's trial.
At Gwin's trial, defense counsel called Gwin's brother as a defense witness. However, Eddie, whose murder conviction was on appeal and who was facing trial for Faulkner's murder, on the advice of counsel, refused to testify and invoked his constitutional privilege against self-incrimination. Later in the trial, defense counsel attempted to introduce the testimony Eddie Gwin had given at his trial. The trial judge sustained the prosecutor's objection and refused to allow the admission into evidence of the transcript of Eddie Gwin's prior testimony. The appellant Gwin maintains that this refusal constitutes error. We disagree.
Simmons v. State, 129 Ala. 41, 29 So. 929 (1901), involved the trial of Joseph Simmons. Before his trial, Mrs. John Simmons had been tried and acquitted for the murder of Houston Webb. Subsequently, Joseph Simmons was also tried for Webb's murder. At his trial, Mr. Simmons offered to prove what Mrs. House, a State's witness, had testified to in the trial of Mrs. Simmons, who had died since the trial. Our Supreme Court held:
 "Evidence by Mrs. House, given on a former trial in the case of the state of Alabama against Maley Simmons, was properly excluded. The evidence of a deceased or absent witness given upon the former trial is only admissible upon the second trial between the same parties or their privies, and in relation to the same subject matter. Here the parties were not the same, nor was there any privity." 129 Ala. at 47.
"[T]he testimony of an absent witness given at the previous trial of another for the same offense with which the defendant is *Page 852 
charged is not admissible." 29 Am.Jur.2d Evidence § 745 (1967). "The now-governing Alabama rule is that if either the party now offering the former testimony, or the party against whom it is offered, was not a party or the successor of a party to the former litigation, the former testimony is not receivable for or against either." C. Gamble, McElroy's Alabama Evidence § 245.07 (7) (3rd ed. 1977). In Miles v. State, 366 So.2d 346 (Ala.Cr.App. 1978); Miles v. State, 343 So.2d 801 (Ala.Cr.App.), cert. denied,343 So.2d 806 (Ala. 1977); and Bridges v. State, 26 Ala. App. 1,152 So. 51, cert. denied, 228 Ala. 72, 152 So. 54 (1933), the parties were the same.
 E.
As stated in part I of this opinion, we have read the transcript of Gwin's trial and find no reason to question the competence of defense counsel Al Shumaker.
Our review convinces us that the judgment of the circuit court denying the petition for writ of error coram nobis is due to be affirmed.
AFFIRMED.
All Judges concur.