State of Nebraska, appellee, v.
Brandon Dye, appellant.
___ N.W.2d ___

Filed October 23, 2015.    No. S-14-792.

1. **Waiver: Appeal and Error.** The validity of an appeal waiver is a question of law.
2. **Judgments: Appeal and Error.** When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision of the court below.
3. **Constitutional Law: Waiver: Appeal and Error.** A defendant can waive a constitutional right, including the right to appeal, if done knowingly and voluntarily.
4. **Convictions: Sentences: Waiver: Appeal and Error.** When a defendant appeals a conviction or sentence despite having waived his or her right to appeal, an appellate court should enforce the waiver only after having reviewed (1) whether the appeal falls within the scope of the waiver, (2) whether the defendant knowingly and voluntarily waived his or her right to appeal, and (3) whether enforcing the waiver would result in a miscarriage of justice.
5. **Waiver: Proof: Appeal and Error.** The burden of proof is on the State to demonstrate that an agreement clearly and unambiguously waives a defendant's right to appeal.
6. **Waiver: Appeal and Error.** Waivers of the right to appeal are to be applied narrowly, with any ambiguities construed against the State and in favor of the defendant's right to appeal.
7. **Sentences: Waiver: Appeal and Error.** Even when a defendant has made a valid waiver of appeal rights, an appellate court may reverse a sentence that is outside of statutory limits or otherwise not authorized by law.
8. **Waiver: Appeal and Error.** Once an appellate court has determined that an appeal waiver is enforceable, the proper remedy is for the appellate court to dismiss the appeal.

Appeal from the District Court for Hall County: Teresa K. Luther, Judge. Appeal dismissed.

Mark Porto, of Shamberg, Wolf, McDermott & Depue, for appellant.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.

Brandon Dye, pro se.

Heavican, C.J., Wright, Connolly, McCormack, Miller-Lerman, and Cassel, JJ., and Moore, Judge.

Miller-Lerman, J.

## NATURE OF CASE

Brandon Dye was convicted by a jury of six crimes: one felony count of robbery, two felony counts of first degree false imprisonment, one misdemeanor count of third degree assault, one misdemeanor count of third degree sexual assault, and one misdemeanor count of carrying a concealed weapon. After trial, the parties entered into a sentencing agreement pursuant to which the State recommended, inter alia, that a sentence of imprisonment for 12 to 13 years for the robbery conviction be imposed and that the other sentences be served concurrently to such sentence. The district court for Hall County imposed sentences in conformity with the recommendation. Dye appeals. The State argues that this appeal should be dismissed because, as part of the sentencing agreement, Dye waived his right to appeal. Dye argues that the waiver is unenforceable. We conclude that the waiver is enforceable, and we therefore dismiss this appeal.

## STATEMENT OF FACTS

The incident giving rise to the charges against Dye occurred on the afternoon of November 7, 2013, when Dye kicked in the door of a hotel room in Grand Island, Nebraska, that was

occupied by three sisters. Dye entered the hotel room because he was searching for a relative of the sisters for the purpose of retrieving a debt the relative owed to him. While in the hotel room, Dye grabbed and bent the arm of one of the sisters and took a cell phone from her and he attempted to take cell phones from the other sisters. Dye also made a number of sexually suggestive comments to the sisters, which they interpreted as offering money in exchange for sexual favors, and he touched one of the sisters on the backside. Based on these actions, the State charged Dye with robbery, two counts of first degree false imprisonment, third degree assault, third degree sexual assault, and carrying a concealed weapon. The State also alleged that Dye was a habitual criminal.

Dye's defense at trial was based primarily on his assertion that at the time of the incident, he was temporarily insane as the result of having involuntarily consumed a drug that another person put in his drink. Dye admitted that shortly before the incident, he had been drinking alcohol and smoking marijuana with his sister and her boyfriend. He testified that he had consumed a similar amount of alcohol and marijuana on other occasions and that it had not caused him problems but that on this occasion, he temporarily lost consciousness. Although he recalled a taxi arriving at his house shortly before the incident occurred, he did not recall anything further until he regained consciousness when police arrived at the scene of the incident. He testified that even at that point, he did not feel fully conscious.

As part of his defense, Dye made an offer of proof of testimony by his girlfriend, Ann Chapman, regarding statements made to her by Chad Willis, the boyfriend of Dye's sister. In a hearing on the admissibility of her testimony, Chapman testified that Willis had told her that on the day of the incident, he had put something into Dye's drink without Dye's knowledge. Chapman testified that Willis said that he had "drugged" Dye's drink with a substance he identified as "'E.'" Dye argued that Chapman's testimony regarding Willis'

statements should be admitted as an exception to the hearsay rule pursuant to Neb. Rev. Stat. § 27-804(2)(c) (Reissue 2008) because it was a statement tending to expose the declarant to criminal liability. The court found that Willis, who was incarcerated, was unavailable as a witness; however, the court concluded that the hearsay statements were not admissible under § 27-804(2)(c), because the circumstances did not demonstrate the trustworthiness of the statements.

The jury found Dye guilty of all counts. When the matter came for sentencing, the State presented evidence to support its allegation that Dye was a habitual criminal. At the sentencing hearing, the court noted that a plea agreement had been offered to Dye prior to the trial and that a sentencing agreement had been offered to Dye after the convictions but prior to the sentencing hearing. The court expressed concern that Dye did not understand the potential benefit of the agreements, because he did not understand the constraints that would be placed on the court's sentencing discretion if it found Dye to be a habitual criminal, specifically, that the court would be required to sentence him to imprisonment for a mandatory minimum of 10 years and that he would not be eligible for parole during that 10-year period. The court therefore continued the sentencing to a later date in order to give Dye an opportunity to review his options with his attorney.

At the next sentencing hearing, the court was informed that the State and Dye had reached an agreement as to a sentencing recommendation. The sentencing agreement required the State to withdraw the habitual criminal allegation, and, as part of the sentencing agreement, Dye signed a waiver which stated as follows:

> I, Brandon Dye, after receiving counsel from my attorney . . . hereby voluntarily and knowingly and intelligently waive any rights to appeal this case and to any post-conviction relief that I may otherwise be entitled. I understand this waiver includes appellant

[sic] and post-conviction relief that may arise from both statutory or constitutional authority. This waiver comes pursuant to a bargain [sic] for agreement, whereby the State agrees to dismiss the habitual criminal charge against me and recommend a 12 - 13 year sentence on Count I, with the remaining counts to be run concurrent to that charge.

The court questioned Dye regarding his understanding of the sentencing agreement and the waiver. Dye replied in the affirmative to the court's questions regarding whether he wished to waive his right to appeal and to go with the sentencing recommendation and whether he understood the effect of the waiver and the sentencing agreement. The court then stated that it would follow the sentencing recommendation. In accordance with the sentencing recommendation, the court sentenced Dye to imprisonment for 12 to 13 years for the robbery conviction, for 2 to 4 years for each of the two false imprisonment convictions, and for 1 year each for the assault, sexual assault, and concealed weapon convictions, and the court ordered that all the sentences be served concurrently to one another.

Dye filed a pro se notice of appeal, and his trial counsel thereafter filed a motion to withdraw as counsel. The Nebraska Court of Appeals allowed trial counsel to withdraw and required the district court to appoint new counsel for appeal. We later sustained the State's petition to bypass the Court of Appeals.

## ASSIGNMENTS OF ERROR

In a brief prepared by appellate counsel, Dye claims that (1) the sentencing agreement, pursuant to which he waived his right to appeal, is unenforceable, and (2) the district court erred when it determined that Chapman's testimony regarding Willis' statements was inadmissible hearsay.

We note that after the State filed its brief, Dye filed a pro se reply brief in which he made several new assignments of

error. For reasons including our disposition of this appeal, these purported assignments of error are neither properly before nor considered by the court.

## STANDARD OF REVIEW

[1,2] The validity of an appeal waiver is a question of law. See *U.S. v. Walters*, 732 F.3d 489 (5th Cir. 2013). When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision of the court below. *State v. Casterline*, 290 Neb. 985, 863 N.W.2d 148 (2015).

## ANALYSIS

Dye contends that the sentencing agreement, pursuant to which he waived his right to appeal, is unenforceable and that we should consider the merits of his assigned error regarding the district court's evidentiary ruling. He argues that appeal waivers are against public policy and should not be enforced. The State contends that the waiver is enforceable. We agree with the State, and we therefore dismiss this appeal.

[3] We have previously stated that a "defendant can waive a constitutional right, including the right to appeal, if done knowingly and voluntarily." *State v. Anderson*, 279 Neb. 631, 637, 781 N.W.2d 55, 60 (2010). In *Anderson*, the defendant argued that two prior driving under the influence convictions could not be used to find him guilty of driving under the influence, third offense, because he was denied due process in connection with those convictions when he waived his right to appeal those prior convictions by pleading guilty under the uniform waiver system. We rejected the defendant's argument and concluded that the waiver of appeal rights in the prior convictions did not violate due process and render the prior convictions invalid for purposes of characterizing the current offense.

Our analysis in *Anderson* was modest due to the nature of the issue presented. In the instant case, we must now analyze

the legal landscape where a defendant waives the right to appeal but nevertheless directly attempts to appeal the conviction or sentence. The obvious obstacle to the appeal lies in Dye's waiver of his appellate rights. We consider this issue in three parts: First, do appeal waivers violate public policy? Second, if not, what should an appellate court review before enforcing a specific waiver? And third, what is the remedy to enforce an appeal waiver?

*Appeal Waivers Do Not Violate*
*Public Policy in Nebraska.*

As noted above, in *Anderson*, we generally acknowledged that a defendant may waive the right to appeal. This is in line with the weight of authority from other state jurisdictions which holds that a waiver of appeal rights is enforceable when made knowingly and voluntarily. See Annot., 89 A.L.R.3d 864 (1979). See, also, *Gwin v. State*, 456 So. 2d 845 (Ala. Crim. App. 1984); *Staton v. Warden*, 175 Conn. 328, 398 A.2d 1176 (1978); *People v. Fearing*, 110 Ill. App. 3d 643, 442 N.E.2d 939, 66 Ill. Dec. 378 (1982); *Creech v. State*, 887 N.E.2d 73 (Ind. 2008); *State v. Hinners*, 471 N.W.2d 841 (Iowa 1991); *State v. Perkins*, 108 Wash. 2d 212, 737 P.2d 250 (1987). But see, *State v. Ethington*, 121 Ariz. 572, 592 P.2d 768 (1979); *People v. Harrison*, 386 Mich. 269, 191 N.W.2d 371 (1971); *Spann v. State*, 704 N.W.2d 486 (Minn. 2005).

In the federal courts, the Court of Appeals for the Eighth Circuit observed that "[a]s a general rule, a defendant is allowed to waive appellate rights" and that "[e]very [federal] circuit that has considered this issue has reached the conclusion that at least some forms of appeal waivers are permissible." *U.S. v. Andis*, 333 F.3d 886, 889 (8th Cir. 2003). The court in *Andis* noted that "the right to appeal is not a [federal] constitutional right but rather 'purely a creature of statute.'" *Id*. (citing *Abney v. United States*, 431 U.S. 651, 97 S. Ct. 2034, 52 L. Ed. 2d 651 (1977)). The court reasoned that given a defendant can waive certain constitutional rights, such as

the right to a jury trial, the right to confront accusers, and the privilege against self-incrimination, it "would be hard-pressed to find a reason to prohibit a defendant from waiving a purely statutory right." *Id*.

We note that although *Andis* states that the U.S. Constitution does not guarantee the right to appeal a criminal conviction, Neb. Const. art. I, § 23, does provide that in capital cases, appeal to this court is a matter of right. The state Constitution continues that "[i]n all other cases, criminal or civil, an aggrieved party shall be entitled to one appeal to [the Court of Appeals] or to the Supreme Court as may be provided by law." Furthermore, an earlier version of Neb. Const. art. I, § 23, provided for the right of appeal in felony cases. Thus, in Nebraska, the right to appeal has long been guaranteed by the state Constitution. Nevertheless, as noted in *Andis*, constitutional rights can be waived; therefore, the right to appeal, even if provided by our state Constitution, can be waived. See *Leach v. State*, 914 So. 2d 519 (Fla. App. 2012) (right to appeal, which is protected by state constitution, may be waived by defendant).

We note that Dye's waiver was not made pursuant to a plea agreement but that instead, Dye had already been convicted of six crimes before he signed the waiver as part of a sentencing agreement reached with the State. The authorities cited above, to the effect that appeal waivers do not violate public policy, mostly involve appeal waivers made pursuant to plea agreements. In this regard, we are aware that some courts have expressed concern regarding appeal waivers made as part of a sentencing agreement for the reason that after the defendant has been convicted, the prosecutor is in a stronger position to demand concessions. See, e.g., *Spann, supra*. However, we are more persuaded by the reasoning of the courts which have endorsed appeal waivers in sentencing agreements and have observed that, if anything, a "defendant's appreciation of the value of the right to appeal is far more refined after guilt or innocence has been decided by trial than before." *People*

*v Seaberg*, 74 N.Y.2d 1, 10, 541 N.E.2d 1022, 1026, 543 N.Y.S.2d 968, 972 (1989).

We believe the defendant is in a better position after conviction than before trial to assess the potential value of an appeal when negotiating with a prosecutor. Other courts have offered similar reasoning and approved appeal waivers as part of sentencing agreements. See, *Leach*, 914 So. 2d at 522 ("[w]e see no reason to treat a plea bargain waiver of the right to appeal differently from a waiver that occurs in a sentencing bargain after a jury's finding of guilt"); *Cubbage v. State*, 304 Md. 237, 247, 498 A.2d 632, 638 (1985) (reasoning that appeal waiver "is equally applicable to one who faces sentencing after having been found guilty and who bargains for sentencing advantages in consideration of a waiver of appeal [as one who bargains before trial]"). To the extent there is concern regarding the bargaining power of the State after the defendant has been convicted, we think that such concern may be addressed in the review, discussed further below, that an appellate court must exercise to determine whether the appeal waiver was made knowingly and voluntarily and whether enforcement of the waiver would result in a miscarriage of justice. We conclude that appeal waivers do not violate Nebraska public policy.

For completeness, we note that Dye's agreement reached after he was convicted contained a second feature, specifically, this "waiver includes . . . post-conviction relief that may arise from both statutory or constitutional authority." Because Dye is presently attempting to bring a direct appeal, the enforceability of the waiver of the right to appeal is at issue here, but the enforceability from a public policy standpoint of his waiver of postconviction rights is not directly implicated. It would not be prudent for us to remark on the waiver of postconviction relief at this time. See *U.S. v. Rollings*, 751 F.3d 1183 (10th Cir. 2014) (where only appellate waiver provision is challenged, appellate court not obligated to consider validity of other parts of agreement). We next turn to issues

an appellate court should consider when deciding whether a specific waiver of appeal is enforceable.

*Limited Review by Appellate Court: Before Enforcing an Appeal Waiver, an Appellate Court Should Review (1) Whether the Appeal is Within the Scope of the Waiver, (2) Whether the Waiver was Made Knowingly and Voluntarily, and (3) Whether Enforcement Would Result in a Miscarriage of Justice.*

Having determined as a general matter that appeal waivers do not violate public policy, we next set forth the process for an appellate court to determine whether an appeal waiver is enforceable in a specific case. We adopt a three-step inquiry developed in federal courts for this purpose.

As discussed above, the Court of Appeals for the Eighth Circuit in *U.S. v. Andis*, 333 F.3d 886 (8th Cir. 2003), stated that a defendant is generally allowed to waive appeal rights. However, the court in *Andis* acknowledged certain limits that are imposed on the enforceability of such waivers. The court stated that when reviewing an appeal waiver, an appellate court "must confirm that the appeal falls within the scope of the waiver and that both the waiver and plea agreement were entered into knowingly and voluntarily." *Id.* at 889-90. The court further stated that "[e]ven when these conditions are met, [an appellate court] will not enforce a waiver where to do so would result in a miscarriage of justice." *Id.* at 890. The limits set forth in *Andis* were described in *U.S. v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004), as a "three-prong analysis" which calls for an appellate court,

in reviewing appeals brought after a defendant has entered into an appeal waiver, to determine: (1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice . . . .

[4] We similarly hold that when a defendant appeals a conviction or sentence despite having waived his or her right to appeal, an appellate court should enforce the waiver only after having reviewed (1) whether the appeal falls within the scope of the waiver, (2) whether the defendant knowingly and voluntarily waived his or her right to appeal, and (3) whether enforcing the waiver would result in a miscarriage of justice. We therefore apply these considerations in the present case and discuss concepts related to each consideration in connection therewith.

[5,6] First, we determine whether this appeal falls within the scope of Dye's waiver. The court in *Andis, supra*, noted that the burden of proof is on the State to demonstrate that an agreement clearly and unambiguously waives a defendant's right to appeal and that waivers of the right to appeal are to be applied narrowly, with any ambiguities construed against the State and in favor of the defendant's right to appeal. We agree with and adopt this approach. In the present case, the waiver signed by Dye states that he waives "any rights to appeal this case." We determine that the present direct appeal is clearly and unambiguously within the scope of Dye's waiver.

Second, we review whether the record shows that Dye knowingly and voluntarily waived his right to appeal. The court in *Andis* recognized that an agreement or waiver may not be knowing or voluntary if, for example, it is entered into upon the ineffective assistance of counsel or upon undue coercion. Other courts also recognize that a waiver of appeal rights does not waive "an ineffectiveness [of counsel] claim having to do with the waiver (or the plea agreement as a whole) and its negotiation." *U.S. v. Smith*, 759 F.3d 702, 707 (7th Cir. 2014), *cert. denied* ___ U.S. ___, 135 S. Ct. 732, 190 L. Ed. 2d 457. See, also, *MacDonald v. State*, 778 A.2d 1064 (Del. 2001). In the present case, however, Dye does not assert, and there is no indication in the record, that the waiver was the result of ineffective assistance of counsel or undue coercion. Instead, the record shows that the district court

questioned Dye at length regarding his understanding of the sentencing agreement, the waiver, and the consequences and that Dye replied in the affirmative to the court's questions regarding whether he wished to waive his right to appeal and whether he understood the effect of the waiver. The record demonstrates that Dye knowingly and voluntarily waived his right to appeal.

[7] Finally, we consider whether enforcing the waiver would result in a miscarriage of justice. With respect to a miscarriage of justice, the Court of Appeals for the Eighth Circuit in *U.S. v. Andis*, 333 F.3d 886, 891 (8th Cir. 2003), noted that "this exception is a narrow one and will not be allowed to swallow the general rule that waivers of appellate rights are valid." However, the court in *Andis* acknowledged, in connection with the miscarriage of justice consideration, that, inter alia, "a defendant has the right to appeal an illegal sentence, even though there exists an otherwise valid waiver." 333 F.3d at 891-92. The court further noted that a sentence is illegal when it is not authorized by the judgment of conviction or when it is greater or lesser than the permissible statutory penalty for the crime. Therefore, even when a defendant has made a valid waiver of appeal rights, an appellate court may reverse a sentence that is outside of statutory limits or otherwise not authorized by law.

The *Andis* court noted that some federal circuits have included within the miscarriage of justice exception sentences based on impermissible factors and claims of ineffective assistance of counsel. However, the sentences in this case are within statutory limits. And, other than Dye's argument that appeal waivers in general violate public policy, he makes no claim, and we see no indication in the record, that enforcement of the specific waiver in this case would result in a miscarriage of justice.

Having determined that this appeal is within the scope of Dye's waiver, that Dye waived his appeal rights knowingly and voluntarily, and that enforcement of the waiver will not

result in a miscarriage of justice, we conclude that Dye's waiver of appeal is enforceable.

*Remedy to Enforce Waiver of Appeal: Proper*
*Remedy to Enforce a Valid Waiver of Appeal*
*Rights Is to Dismiss the Appeal.*

[8] Having determined that the appeal waiver is enforceable, we must determine how the waiver is to be enforced when the defendant ignores the waiver and attempts to appeal the convictions or sentences. We agree with the majority of courts which have concluded that once an appellate court has determined that an appeal waiver is enforceable, the proper remedy is for the appellate court to dismiss the appeal. E.g., *U.S. v. Smith*, 759 F.3d 702 (7th Cir. 2014); *U.S. v. Rollings*, 751 F.3d 1183 (10th Cir. 2014); *U.S. v. Walters*, 732 F.3d 489 (5th Cir. 2013); *Cubbage v. State*, 304 Md. 237, 498 A.2d 632 (1985).

Contrary to the weight of authority, we are aware that in *State v. Gibson*, 68 N.J. 499, 512, 348 A.2d 769, 775 (1975), the Supreme Court of New Jersey held that "a defendant [who has signed an appeal waiver and] who has not pleaded guilty, but has been convicted after trial, remains desirous of securing appellate review of the conviction and files therefor in time, should be allowed his appeal." The New Jersey court distinguished an appeal waiver as part of a plea agreement from the situation in which the defendant was convicted at trial and waived appeal rights as part of a sentencing agreement. The New Jersey court warned that "a defendant who has obtained sentence or charge concessions in consideration of the appeal-waiver would be subject to their revocation, at the option of the State, immediately upon the filing of the appeal." *Id*. The New Jersey court therefore required that the trial court advise the defendant that "notwithstanding his agreement not to appeal the conviction he may nevertheless file a timely appeal, but that if he does so, then, at the option of the prosecutor, the agreement will become inoperative and he may be resentenced

. . . and that any charges dismissed pursuant thereto may be reinstated." *Id.* at 513, 348 A.2d at 776. As we read *Gibson*, the consequence to a convicted defendant who files an appeal notwithstanding an appeal waiver is that all concessions agreed to by the prosecution are revoked.

The Court of Appeals of Maryland considered *Gibson* in *Cubbage, supra*, and rejected the *Gibson* holding. We agree with the analysis in *Cubbage*. The court in *Cubbage* noted, inter alia, "difficulties with the New Jersey approach," including concerns with regard to judicial economy and with regard to situations in which the waiver is part of an agreement involving multiple cases. 304 Md. at 249, 498 A.2d at 638. Because of such concerns, the court concluded that "the better rule is to hold the defendant to the knowing and voluntary waiver which he made" and that "[o]nce the appellate court confirms that the waiver is indeed knowing and voluntary, the appeal going to the merits of the judgment of conviction should be dismissed." *Id*. at 250, 498 A.2d at 639.

We similarly hold that once an appellate court has made the determinations that an appeal falls within the scope of the appeal waiver, that the defendant knowingly and voluntarily waived his or her right to appeal, and that enforcing the appeal waiver would not result in a miscarriage of justice, then the appeal going to the merits of the judgment of conviction and sentence should be dismissed. This is the remedy followed in *U.S. v. Andis*, 333 F.3d 886 (8th Cir. 2003), and the majority of cases, and we employ it here.

Because dismissal is the proper remedy, we do not consider the evidentiary issue Dye has raised in this appeal.

## CONCLUSION

We conclude that Dye's waiver of his right to appeal entered into as part of a sentencing agreement after trial is enforceable. We therefore dismiss this appeal without considering the other issue raised by Dye.

APPEAL DISMISSED.